Stephen A. TISDEL, District Attorney of the Sixteenth Judicial District of the State of Colorado, Plaintiff-Appellant,

v.

The BOARD OF COUNTY COMMISSION-ERS OF the COUNTY OF BENT, State of Colorado: Glen Gill, Kenneth Kester and Thomas Pointon, in their respective capacities as individual members of said Board and individually; The Board of County Commissioners of the County of Crowley, State of Colorado: Oran Bur-mood, Charlie Caldwell and Loren A. Sober, in their respective capacities as individual members of said Board and individually; The Board of County Com-missioners of the County of Otero, State of Colorado: Robert Bauserman, Garth Grenard and John J. Vess, in their re-spective capacities as individual mem-bers of said Board and individually, De-fendants-Appellees.

No. 79SA308.

Supreme Court of Colorado, En Banc.

Dec. 22, 1980.

Rehearing Denied Feb. 9, 1981.

Cover Mendenhall, Mendenhall & Malouff, Rocky Ford, for plaintiff-appellant.

Fred E. Sisk, Las Animas, for defendant-appellee The Bd. of County Com'rs of Bent County.

Lawrence L. Fenton, Ordway, for defendant-appellee The Bd. of County Com'rs of Crowley County.

Rexford L. Mitchell, Rocky Ford, for defendant-appellee The Bd. of County Com'rs of Otero County.

Andrew A. Vogt, Denver, for amicus curiae Colorado Dist. Attys. Council.

Perry L. Burnett, Denver, for amicus curiae Colorado Counties, Inc.

J. D. MacFarlane, Atty. Gen., David K. Rees, Asst. Atty. Gen., Denver, for intervenor.

DUBOFSKY, Justice.

The district attorney for the Sixteenth Judicial District, Stephen A. Tisdel, appeals the decision of the district court that the County Commissioners for Bent, Crowley and Otero Counties could decrease his salary for the second year of his term of office. We reverse.

Stephen A. Tisdel was elected district attorney for the Sixteenth Judicial District on November 2, 1976, and began his four-year term of office on January 11, 1977. At the time he took office, the salary for the district attorney was $33,000 per year. That salary had been included in the budget for the 1977 calendar year proposed by his predecessor in the Fall of 1976. Members of the Boards of County Commissioners for Bent, Crowley, and Otero Counties (County Commissioners) testified that they were unaware of the district attorney's salary level when they adopted the 1977 budget.[1] In March, 1977, the County Commissioners discovered that Tisdel's salary was higher than had been intended, but they decided to pay him at the higher rate because the amount he claimed had been budgeted for the year.

Tisdel's budget request of a salary at $33,000 per year for 1978 was denied by the County Commissioners. They set his annual salary for 1978 at the statutory minimum, $29,000. Final budgets were adopted by the various counties in November, 1977. Before he had received a paycheck at the new lower rate, Tisdel requested a meeting with the County Commissioners. This was held on January 24, 1978, and Tisdel was informed on February 2, 1978, that the County Commissioners had refused to amend the 1978 budget.

Tisdel filed a "Petition for Relief under Rule 106, Complaint for Declaratory Relief, and for Damages" with the district court. The trial court denied his claims, ruling that any amount budgeted for the district attorney's salary over the statutory minimum of $29,000 per year was within the County Commissioners' discretionary authority over the conduct of fiscal affairs,[2] that the defendant had not properly brought his action under C.R.C.P. 106, and that the plaintiff had not presented a claim for audit and allowance to the Boards of County Commissioners as required by section 30–25–110, C.R.S. 1973. The trial court's ruling that it lacked jurisdiction to review the County Commissioners' decision under C.R.C.P. 106 was correct; however, the court should have entertained the plaintiff's claim for declaratory relief under C.R.C.P. 57. It was not necessary for the district attorney to present a claim for audit and allowance to the County Commissioners as a prerequisite to filing suit. Finally, because the provisions of *Colo. Const.* Art. XII, Sec. 11, which prohibit an increase or decrease in the salary of any elected public officer during the term of office for which he was elected, limit the discretion of county commissioners to determine fiscal policy, the trial court should have granted the plaintiff's requested relief.

I.

The plaintiff's claims were properly before the trial court.

C.R.C.P. 106(a)(2) provides that relief may be obtained in the district court where it is sought to compel an entity such

---

1. Effective January 11, 1977, the district attorney's minimum salary was raised from $24,000 to $29,000. Section 20–1–301, C.R.S. 1973 (1978 Repl.Vol. 8). The State pays 80% of the district attorney's minimum salary, and counties making up a judicial district pay the remaining amount of the district attorney's salary, based upon each county's proportionate share of the caseload in the judicial district. Section 20–1–306, C.R.S. 1973 (1978 Repl.Vol. 8). In the Sixteenth Judicial District, Otero County pays approximately 70% of the counties' share of the salary, Bent County pays

approximately 20%, and Crowley County pays approximately 10%. Apparently, the County Commissioners realized that the district attorney's salary was to increase for the calendar year 1977, but they did not total the figures in the budgets presented to them to discover the amount of the increase approved.

2. County commissioners have ultimate fiscal responsibility for county finances; they set department budgets within existing county revenue. *Wadlow v. Kanaly*, 182 Colo. 115, 511 P.2d 484 (1973).

as the Board of County Commissioners to perform an act which the law specially enjoins as a duty. Such obligatory acts are commonly characterized as ministerial rather than discretionary. Generally, the approval of requests for money from the county general fund is a discretionary function of boards of county commissioners, not a ministerial act. *Tihonovich v. Williams*, 196 Colo. 144, 582 P.2d 1051 (1978); *Wadlow v. Kanaly, supra.* The limitation on the county commissioners' discretionary fiscal authority we announce here was not clear at the commencement of this litigation; therefore, mandatory relief under C.R.C.P. 106(a)(2) is not appropriate. *Denver Ass'n for Retarded Children v. School Dist. No. 1*, 188 Colo. 310, 535 P.2d 200 (1975)[3]; *Potter v. Anderson*, 155 Colo. 25, 392 P.2d 650 (1964).[4]

██ The other basis asserted for injunctive relief is C.R.C.P. 106(a)(4) which authorizes judicial review of the decisions of inferior tribunals exercising judicial or quasi-judicial powers. Clearly, however, the adoption of budgetary items is legislative, not judicial, in character. *Tihonovich v. Williams, supra.*

However, the trial court erroneously failed to recognize that the relief sought by the plaintiff was not limited to the remedies available under C.R.C.P. 106. The caption of the complaint requested declaratory relief, and counsel for the plaintiff, although he failed to move that the pleadings be amended to conform to the proof, requested a declaratory judgment at the close of the trial.[5]

██ The question which should concern us is not whether the plaintiff has asked for the proper remedy, but whether he is entitled to any remedy. If the plaintiff is entitled to relief under the allegations of the complaint, the court may grant it regardless of the specific remedy requested. *Regennitter v. Fowler*, 132 Colo. 489, 290 P.2d 223 (1955). Resolution of a conflict between the statutory rights and duties of two constitutional officers requires an interpretation of various statutes by a judge. *Tihonovich v. Williams, supra.* Therefore, we hold that the plaintiff has pled a justiciable claim for declaratory relief within the general jurisdiction conferred on the trial court by *Colo. Const.* Art. VI, Sec. 9.

The defendants also contend, and the trial court found, that the judicial branch lacks jurisdiction over the plaintiff's claims because the plaintiff did not comply with section 30–25–110, C.R.S. 1973, which provides:

"(1) Any claim or demand held by any person against a county shall be presented for audit and allowance to the board of county commissioners of the proper county, in due form of law, before an action in any court shall be maintainable thereon...."

The trial court's ruling relied on *Calahan v. County of Jefferson*, 163 Colo. 212, 429 P.2d 301 (1967), in which we upheld the dismissal of a plaintiff's suit to vacate dedication of a strip of land on the basis that the claim had not been presented to the county for audit before suit was commenced. However, in *Heim v. District Court*, 195 Colo. 107, 575 P.2d 850 (1978), we determined that presentation of a claim for audit is not necessary under section 30–25–110 when a private treatment center requests that the county pay the costs of treatment for a child in

---

**3.** In *Denver Ass'n for Retarded Children*, we said,
"[T]he statute clearly requires that the 'school district *shall* provide to the community incorporated board' a sum of money determined by a stated formula. Therefore, a clear right in the Board to demand performance and a clear legal duty on the defendants to act, makes this a proper case for disposition by mandamus. *Ahern v. Baker*, 148 Colo. 408, 366 P.2d 366." (Emphasis in original.) *Id.* 535 P.2d at 205.

**4.** In *Potter v. Anderson*, we said,
"The writ [of mandamus] will not issue in doubtful cases, but only where the duty sought to be enforced *is clear* and where *no other specific and adequate mode* of relief is available to the complaining party." (Emphasis in original.) *Id.* 392 P.2d at 652.

**5.** The text of the complaint is ambiguous on the question of declaratory relief.

need of supervision who is in the county's legal custody. *Heim* distinguished *Calahan* on the basis that no specific dollar liability was imposed on the county by the remedy sought by and afforded the treatment center: an order designating the county as the governmental entity liable for the payment of the facility's reasonable fees.

■ The *Heim* distinction applies here. The trial court should have determined whether the County Commissioners violated *Colo. Const.* Art. XII, Sec. 11 before requiring the plaintiff to submit to each county his accumulated salary claims. The purpose of the claim statute is to give the county an opportunity to pay a claim before being required to defend against it in court. All the testimony at trial indicated that the County Commissioners had notice of, and a number of opportunities to resolve, the plaintiff's claims against them. However, now that we have resolved the underlying legal issue, the plaintiff must comply with section 30–25–110 prior to seeking court enforcement of the counties' liability for the dollar amount of his claims. *Heim v. District Court, supra.*

## II.

The County Commissioners argue that any salary they choose to pay the district attorney, in excess of the statutory minimum of $29,000, is discretionary. Section 20–1–301, C.R.S. 1973 (1978 Repl.Vol. 8), provides:

"(1) Commencing January 11, 1977, in every judicial district the district attorney shall receive as compensation for his services the sum of not less than $29,000 per annum. Any amount in excess of $29,000 shall be set by the boards of county commissioners of the county or counties comprising the judicial district or the city council of the respective city and county affected."

The statute has been interpreted in *Johns v. Miller*, 42 Colo.App. 97, 594 P.2d 590 (1979). The district attorney there sued the county commissioners to increase his salary from $29,000 to $37,000. The court ruled that the statute gives the boards of county commissioners exclusive authority to determine salary amounts above $29,000, and that a trial court must defer to the board's discretionary acts unless an abuse of discretion is proven. *See Tihonovich, supra.*

The discretion of the county commissioners, however, is not unlimited. Article XII, Section 11 of the Colorado Constitution provides:

"No law shall extend the term of any elected public officer after his election or appointment nor shall the salary of any elected public officer be increased or decreased during the term of office for which he was elected . . . ."

■ There have been no cases interpreting this particular constitutional amendment, but the purpose of the provision was explained in *Lancaster v. Board of Commissioners*, 115 Colo. 261, 171 P.2d 987 (1946), an opinion interpreting *Colo. Const.* Art. V, Sec. 30 (which was repealed on November 5, 1974, at the time Art. XII, Sec. 11 was adopted. Colo.Sess.Laws, 1974, p. 450).[6] The prohibition against modifying an elected public officer's salary during his term of office is intended to deter the appropriative body from influencing a public officer by threat or promise of salary change, and to discourage the officer from himself seeking increased compensation. *Lancaster v. Board of Commissioners, supra.*

■ The district attorney is a state public officer. *Johns v. Miller, supra; Anderson v. Adams County*, 41 Colo.App. 441, 592 P.2d 3 (1978). The Legislature implicitly recognized that the salaries of district attorneys could be increased only at the beginning of a new term of office when section 20–1–301 was enacted with an effec-

---

**6.** A Legislative Council publication issued before the 1974 general election described the purpose of the amendment as "housekeeping" or "nonsubstantive." *An Analysis of 1974 Ballot Proposals*, Legislative Council of the Colorado General Assembly, *Research Publ.* # 206. The amendment moved the restriction on pay increases or decreases from Art. V ("Legislative Department") to Art. XII ("Officers").

tive date of January 11, 1977, which coincided with the date district attorneys throughout the state began a new four year term.

 Here, the plaintiff's annual salary on the day he commenced his term of office was $33,000. That salary was paid for a full year with the explicit knowledge of the County Commissioners. By paying the plaintiff that sum, the County Commissioners ratified the annual salary of $33,000 per year set by the 1977 budget. *Tihonovich v. Williams, supra; Wadlow v. Kanaly, supra; Johnson v. Board of Commissioners*, 174 Colo. 350, 483 P.2d 1344 (1971); *Schroeder v. Commissioners*, 152 Colo. 313, 381 P.2d 820 (1973); once they had ratified the salary paid at the commencement of the plaintiff's term of office, the County Commissioners were without the power to reduce the salary during the plaintiff's four year term. *Colo. Const. Art.* XII, Sec. 11.

## III.

The plaintiff sought attorneys' fees for payment of private counsel retained to prosecute this action.[7] In support of his claim, the plaintiff cites *Wadlow v. Kanaly, supra*, which upheld the award of attorneys' fees for a county treasurer who brought suit against a board of county commissioners seeking to reverse the county commissioners' decision reducing the salaries set by the treasurer for his employees. There, we said that

"When the question of the respective powers of two governmental bodies is at issue, it would be inequitable to require one official, acting in his official capacity, to personally bear the burden of attorney's fees and costs generated in the suit. *Schroeder v. Board of County Commissioners*, 152 Colo. 313, 381 P.2d 820 (1963)."

*Id.* 182 Colo. at 121, 511 P.2d 484.

 However, the claims for attorneys' fees in *Wadlow* and *Schroeder* were based

on C.R.S. 1963, 56–2–10, now section 30–2–104, C.R.S. 1973, which provides for the compensation of deputies and assistants hired by county clerks and recorders, county treasurers, county assessors, and county superintendents of schools. The statute provides that if litigation relating to compensation or classification is instituted by one of the enumerated elected officials, the costs of any litigation shall be paid out of the county general fund.[8] Under circumstances of this case, because there is no statutory authority for the payment of attorneys' fees for a district attorney seeking to protect his salary from a reduction in violation of the Colorado Constitution, there is no basis for the trial court, on remand, to order payment of the plaintiff's attorneys' fees.

Judgment is reversed and cause remanded for proceedings consistent with this opinion.

---

7. There is nothing in the record to indicate that the plaintiff requested representation by the state Attorney General or sought a commitment for payment of legal fees by the County Commissioners prior to suit.

8. Since this litigation was instituted, section 30–2–104 has been amended, and the provision for costs of any litigation was excised. Colo. Sess.Laws 1979, ch. 296, 30–2–104 at 1134.