Paul Q. BEACOM, as District Attorney In and For the SEVENTEENTH JUDICIAL DISTRICT, ADAMS COUNTY, Colorado, Petitioner-Appellee and Cross-Appellant,

v.

The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF ADAMS, State of Colorado, Respondent-Appellant and Cross-Appellee.

No. 81SA289.

Supreme Court of Colorado, En Banc.

Jan. 17, 1983.

Paul Q. Beacom, Dist. Atty., Marc P. Mishkin, Deputy Dist. Atty., Brighton, for petitioner-appellee and cross-appellant.

S. Morris Lubow, Adams County Atty., Ann Victoria Hopcroft, Kathryn Schroeder, Asst. County Attys., Brighton, for respondent-appellant and cross-appellee.

DUBOFSKY, Justice.

The petitioner, Paul Q. Beacom, the district attorney for the 17th Judicial District, filed a petition on November 13, 1979 in Adams County District Court seeking a writ of mandamus[1] to require the respondent Adams County Board of County Commissioners (board) to fund the full amount of his budget request for 1980 and a declaratory judgment that the employees of his office were employees of the 17th Judicial District[2] and not county employees subject to a variety of county administrative requirements. The respondent board counterclaimed, seeking a declaration that the employees of the district attorney's office were county employees for a variety of purposes, and that the district attorney was bound by the board's budget determinations. The district court ordered that the district attorney's budget be increased for certain items, holding that before the board may adopt a budget for less than the amount requested by the district attorney for necessary expenditures, the board must file suit and maintain the burden of showing the expenditures are not necessary. The court also ruled that persons employed in the district attorney's office were employees of the judicial district and not state or county employees. Finally, the court answered a number of the questions raised by the parties about the division of administrative duties between the district attorney and the county. Both the district attorney and the board appealed the rulings of the district court.[3] We reverse the judgment of the district court.

In the fall of 1979, Beacom submitted to the board a budget request of $1,468,992 for the operation of his office for calendar year 1980. The board considered the district attorney's request, along with approximately 80 other budget requests seeking a total of $72,000,000 for the calendar year. On November 13, 1979, the board set a budget of $60,000,000, including $1,238,047 for Beacom's office. Two county commissioners and several other county officials testified that the board determined the district attorney's office budget by projecting the 1979 expenditures for the office. The district attorney's budget for 1979 was $993,720. The budget approved by the board for 1980 was approximately 20% larger than the 1979 budget and included six new positions and substantial salary increases for all the district attorney's employees. Among the items disallowed by the board were one of the three investigators and one of the two chief trial deputies requested. Other items the board rejected included additional health insurance benefits for dental and optical care; $12,400 for trips for 25 deputy district attorneys to Continuing Legal Education programs out-of-state; an automobile radio communication system for senior staff and investigators; and $10,000 for the cost of printing a monthly newsletter for county law enforcement agencies.

The district court approved a budget of $1,371,299 for the district attorney's office, including the requested investigator position and pay, but excluding an appropriation for an additional chief deputy district attorney because section 20-1-201(2), C.R.S. 1973 (1978 Repl.Vol. 8) provides that the district attorney may not appoint more than one chief deputy district attorney without the prior approval of the board of county commissioners.[4] The court determined that

---

1. Beacom sought a writ of mandamus under C.R.C.P. 106(a)(2). The district court determined that mandamus was not the proper remedy but that Beacom had stated a claim for relief. See *Tisdel v. Board of County Commissioners*, 621 P.2d 1357 (Colo.1980); *Tihonovich v. Williams*, 196 Colo. 144, 582 P.2d 1051 (1978); *Johns v. Miller*, 42 Colo.App. 97, 594 P.2d 590 (1979).

2. Adams County is the only county in the 17th Judicial District.

3. This case was transferred here from the Court of Appeals under sections 13-4-110(1)(a) and 13-4-102(1)(b), C.R.S.1973 because the petitioner argued the significance of the separate constitutional status of the district attorney under *Colo. Const.* Art. VI, § 13.

4. Section 20-1-201(2) provides: "... [N]o district attorney may appoint more than one chief deputy district attorney without the prior approval of the board of county commissioners...."

the board based its denial of the requested chief trial deputy position on budgetary restraints, see section 30–25–201, C.R.S.1973 (1977 Repl.Vol. 12) (repealed, L. 81, p. 1400, § 15, effective June 19, 1981 and replaced by sections 29–1–301, *et seq.*, C.R.S.1973 (1982 Supp.)) (limitation on county mill levy as source of revenue), and that the board's action was not arbitrary or unreasonable. The court also determined that there was no statutory authority for the district attorney to maintain fringe benefits for his employees, and therefore, the sums allowed for fringe benefits including health insurance were within the discretion of the county commissioners. The court disallowed the radio communication systems, the newsletter and out-of-state travel because they were not necessary for maintaining the district attorney's office and, therefore, were subject to discretionary review by the board.[5]

Beacom's second claim was for a declaration that the personnel in his office were employees of the 17th Judicial District. He requested that the court direct the board not to interfere with his classification of employees, determination of salaries, and participation in county fringe benefit programs. During the summer of 1979, the district attorney hired an office administrator and sought approval from the county to provide his own administrative services for payroll, insurance deductions and payments, personnel classification, and assorted other administrative duties. From our review of the record, we cannot ascertain whether the board made a determination on this issue. The district court partially addressed the issue in the context of the budgetary dispute.[6] With respect to the declaration sought by the district attorney, the court stated that administrative matters concerning the district attorney's office are internal responsibilities to be handled by his staff; however, since the 17th Judicial District is composed of one county, the court observed that it would be more economical for the Adams County Treasurer to pay the district attorney's expenses.[7]

The board, by counterclaim, sought a declaration that the employees of the district attorney's office were county employees for the purpose of unemployment compensation; worker's compensation; social security coverage; retirement and pension plan participation; group health, life and disability insurance; all other fringe benefits; the "peace officers" statute (section 29–5–111, C.R.S.1973) (1977 Repl.Vol. 12); the "Colorado Governmental Immunity Act" (section 24–10–101, *et seq.*, C.R.S.1973) (1982 Supp.); and section 30–2–104, C.R.S.1973 (1977 Repl.Vol. 12, 1982 Supp.), relating to the county pay, classification and benefit plan; and that the district attorney was bound by the budget laws contained in article 25 of Title 30, C.R.S.1973 (1977 Repl.Vol. 12, 1982 Supp.) and article 1 of Title 29, C.R.S.1973 (1977 Repl.Vol. 12, 1982 Supp.). In response, the court ruled that the district attorney was bound by the budget laws only if the items for which funds were requested were not necessary expenses of the office under article 1 of Title 20, C.R.S. 1973 (1978 Repl.Vol. 8, 1982 Supp.). The court determined that the district attorney was required to provide social security coverage as a fringe benefit under section 20–1–307, C.R.S.1973 (1978 Repl.Vol. 8) and may obtain liability insurance coverage under 24–10–115, C.R.S.1973 (1982 Repl.Vol. 10), but that his direct provision of any other fringe benefits would require a grant of authority from the General Assembly.

5. The district attorney conceded at oral argument that the cost of the newsletter was not a necessary expense for maintaining the district attorney's office.

6. Specifically, the court stated that after the board has adopted a budget, the district attorney may adjust salaries, hire additional personnel, and reclassify employees if he stays within the amount budgeted.

7. The district attorney requested the court to order that one-twelfth of his budget be disbursed to his office each month. The court denied the request, ruling that there is no statutory requirement for the county to pay the district attorney in advance for necessary expenditures.

On appeal, the board points to the district court's failure to adequately consider section 30–11–107(2), C.R.S.1973 (1977 Repl. Vol. 12, 1982 Supp.) in ruling that the district attorney is entitled to full funding for the necessary expenditures of his office. We agree with the board that section 30–11–107(2) controls, giving the board the discretion to approve or disapprove items in the district attorney's budget request and placing the burden on the district attorney to prove the necessity of a requested budget item denied by the board. Our resolution of this issue does not require determination of whether employees of the district attorney's office are county, state or judicial district employees. That issue was improperly before the district court, and our addressing it would constitute an advisory opinion in the context of this case.

## I.

Section 30–11–107(2) provides:

(a) Subject to the provisions of part 1 of article 1 of title 29, C.R.S.1973, ["Local Government Budget Law of Colorado"] the board of county commissioners of each county has exclusive power to adopt the annual budget for the operation of the county government, including all offices, departments, boards, commissions, other spending agencies of the county government, *and other agencies which are funded in whole or in part by county appropriations.* All such entities shall make appropriate budget recommendations each year to the board of county commissioners for the operation of their respective offices; but the final budget determination of each board of county commissioners shall be binding upon each of the respective offices, departments, boards, commissions, other spending agencies of the county government, and other agencies which are funded in whole or in part by county appropriations.

(b) Every decision made by the board of county commissioners in exercising its budget-making power shall be presumed to be a valid exercise of the power granted by paragraph (a) of this subsection (2).

(Emphasis added.) All expenses of the district attorney's office, compensation and benefits for his employees, and a portion of his salary are paid with county funds. Therefore, the office of the district attorney is an agency which is "funded in whole or in part by county appropriations."[8]

In 1977, the General Assembly added subsection (2) to section 30–11–107. The amendment nullified the effect of *Kanaly v. Wadlow,* 31 Colo.App. 193, 502 P.2d 83 (1972) (a county treasurer is empowered to fix the salaries of his employees, and where question is raised as to the reasonableness of the salaries, the burden is on the board of county commissioners to establish unreasonableness) and *Johnson v. Board of County Commissioners of Chaffee County,* 174 Colo. 350, 483 P.2d 1344 (1971) (the burden is on the board of county commissioners to show that no reasonable necessity exists for employment of a clerk-typist by the district attorney). In *Kanaly,* the Court of Appeals considered statutory language granting the treasurer the power to fix the salaries of his employees with approval of the board of county commissioners. The Court of Appeals held that the language, "with the approval of the board" does not give the board "unbridled power to change salaries fixed by the Treasurer." 502 P.2d at 85.

The district attorney argues that similar statutes[9] granting to the district

---

8. The district court ruled that title 30, part 11 does not apply to this controversy because the district attorney's office is not a spending agency of the county. The district attorney argues that section 30–11–107(2) does not apply to him because in *People v. Losavio,* 199 Colo. 212, 606 P.2d 856 (1980) we held that the district attorney's office is not a spending agency of a county in a judicial district. However, *People v. Losavio* was limited to the definition

of a spending agency for purposes of section 29–1–118, C.R.S.1973, governing removal of an officer guilty of malfeasance in office. Moreover, section 30–11–107(2) is not limited to spending agencies of a county; it explicitly applies to *other* agencies which are funded in whole or in part by county appropriations.

9. Section 20–1–203, C.R.S.1973 (1978 Repl.Vol. 8) provides:

attorney the power to appoint employees and fix their compensation, subject to the approval of the board of county commissioners, mandate a result similar to that in *Kanaly, supra* and *Johnson, supra.* Had the General Assembly not acted, *Kanaly* and *Johnson* would control the result in this case. However, the 1977 statutory change gives the county commissioners the authority to make the final budget determination for agencies such as the office of the district attorney which are funded in whole or in part by county appropriations and establishes a statutory presumption that the board validly exercised its budget-making power.

In addition to the power to appoint and pay employees, the district attorney is entitled to collect and receive the necessary expenses of maintaining his office and the expenses necessarily incurred in the discharge of his official duties.[10] However, his authority to collect and receive such necessary expenses is conditioned upon other specific statutory provisions such as section 30–11–107(2), which gives the board of county commissioners the exclusive power to adopt an annual budget which is binding upon the district attorney and presumptively valid.

The district attorney contends that if section 30–11–107(2) places approval of the district attorney's budget within the discretion of the board, the statute violates the constitutional doctrine of separation of powers.[11] He relies upon *Smith v. Miller,* 153 Colo. 35, 384 P.2d 738 (1963) which held that under prior statutes the board of county commissioners had no choice but to approve salaries of judicial employees within the county because the doctrine of separation of powers required an independent judiciary.

The district attorney, although elected from a judicial district as provided in *Colo. Const.* Art. VI, Sec. 13, is not a member of the judiciary. Rather, the district attorney is an executive officer of the state. *Tisdel v. Board of County Commissioners,* 621 P.2d 1357 (Colo.1980); *People v. District Court,* 186 Colo. 335, 527 P.2d 50 (1974). The individual county commissioners are also constitutional officers, *Colo. Const.* Art. XIV, Sec. 6, with executive, legislative and quasi-judicial responsibilities. The budgetary responsibility of the

---

"Compensation for all deputy, chief deputy, part-time deputy, assistant, and part-time assistant district attorneys shall be fixed by the district attorney with the approval of the board of county commissioners. . . ."
Section 20–1–209, C.R.S.1973 (1978 Repl.Vol. 8) provides:
"(1) The district attorney of each judicial district is authorized to appoint a chief investigator and such other investigators as he may deem necessary in the conduct of his office, and such stenographers, office employees, and such other technical and professional assistants as are necessary to properly transact the business of his office. The salary and compensation in each instance for such employees and assistants shall be fixed by such district attorney in an amount commensurate with the services performed and the duties and responsibilities of such employees, subject to the approval of the board of county commissioners of the county. . . .
(2) The salaries of any personnel so appointed shall be paid by the various counties. . . ."

**10.** Section 20–1–302, C.R.S.1973 (1978 Repl. Vol. 8) provides:
"Except as otherwise specifically provided, the district attorney of each judicial district . . . shall be entitled to collect and receive at the end of each month, of and from the respective counties in his judicial district, the necessary expenses of maintaining an office for the transaction of his official business, which expenses shall be borne by the various counties in his judicial district. . . ."
Section 20–1–303, C.R.S.1973 (1978 Repl.Vol. 8) provides:
"Except as otherwise specifically provided, the district attorney of each judicial district . . ., and each of his assistants and deputies, shall be allowed to collect and receive from each of the counties in his district the expenses necessarily incurred in the discharge of his official duties for the benefit of such county."

**11.** *Colo. Const.* Art. III provides: "The powers of the government of this state are divided into three distinct departments,—the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any power properly belonging to either of the others, except as in this constitution expressly directed or permitted."

county commissioners is a legislative function. *Tihonovich v. Williams, supra; Johns v. Miller, supra.*

We interpret the separation of powers argument made by the district attorney to be a complaint that by exercising its legislative function in adopting a budget for the county, the board may interfere with the district attorney's executive responsibility to prosecute criminal cases. The General Assembly has provided a statutory framework in title 20 to accommodate the executive function of the district attorney and in titles 29 and 30 to accommodate the legislative budget-setting function of the board. The district attorney has not alleged any specific instance in which the Adams County Board of Commissioners has interfered with his ability to prosecute a given case because of the board's exercise of its legislative function. Therefore, we reject his argument that section 30–11–107(2) violates the constitutional doctrine of separation of powers.

The responsibility for county finances is borne exclusively by the board of county commissioners, and circumstances to be considered by the board "include the amount of revenue available, the needs of other county departments and the ability of the county's taxpayers to fund additional requests, as well as the requesting department's need for the expenditures." *Tihonovich v. Williams,* 582 P.2d at 1056. Trial testimony indicated the board decreased some of the items in the district attorney's requested budget based on the needs of other offices and the probable income to Adams County in fiscal year 1980. The district attorney's final budget for fiscal year 1980 was a decision for the board, and it is the burden of the district attorney to prove the necessity of the budgetary items denied by the board.[12]

We assume the board paid for the items which the district court ordered the board to pay because the judgment of the district court was not stayed. Although we reverse the district court's decision, the board's payment of the controverted expenses and the passage of several fiscal years militate against retroactive application of our result to those 1980 expenses. *Johns v. Powell,* 35 Colo.App. 108, 532 P.2d 971 (1974), *cert. dismissed,* 190 Colo. 88, 543 P.2d 1261 (1975).

Our holding that section 30–11–107(2) gives the board the discretion to approve or disapprove items in the district attorney's budget request and places the burden on the district attorney to prove the necessity of a requested budget item denied by the board governs our consideration of the district attorney's challenge on appeal to those items which the district court denied as unnecessary. A court's role in reviewing discretionary budgetary decisions by a board of county commissioners is limited to the determination of whether the board abused its discretion by acting arbitrarily or unreasonably. *Tihonovich v. Williams, supra; Johns v. Miller, supra.* Where a district attorney presents evidence that a budget request is reasonable and a board of county commissioners presents evidence of other budget concerns, an appellate court may determine only whether there is sufficient competent evidence to support the board's decision. *Johns v. Miller, supra,* 594 P.2d at 593. Our review of the record before us indicates sufficient competent evidence based on other budget concerns to support the board's denial of the district attorney's requests for out-of-state travel, a radio communications system, a third chief deputy, and health insurance benefits for dental and optical care.

## II.

The parties asked the district court to determine whether the district attorney's employees are county, state or judicial district employees for a number of purposes. The only actual controversy before the district court was the board's denial of certain

12. This is not to say that the board can avoid paying unanticipated necessary expenses of the district attorney if unanticipated expenses exceed the original budget, nor to say that the district attorney may not use his budget as he chooses, so long as he stays within it, *Tihonovich, supra.* These questions are not before us.

budgetary items. We view the remaining requests for declaratory judgment—that of the district attorney for a declaration that the employees of his office are employees of the 17th Judicial District, and that of the county for a declaration that the employees of the district attorney's office are county employees for purposes of a variety of insurance and retirement programs and the county pay, classification and benefit plan—as requests for advisory opinions.

 The Uniform Declaratory Judgments Law, section 13–51–101, *et seq.*, C.R.S.1973 and C.R.C.P. 57 give the district court the power to declare rights, status, and other legal relations affected by a statute when the court is presented with a question of construction or validity arising under the statute, but the court may refuse to render or enter a declaratory judgment or decree where such judgment or decree would not terminate the uncertainty or controversy. A proceeding for declaratory judgment must be based upon an actual controversy and not be merely a request for an advisory opinion. *Farmers Elevator Company v. First National Bank,* 176 Colo. 168, 489 P.2d 318 (1971); *Heron v. City and County of Denver,* 159 Colo. 314, 411 P.2d 314 (1966)[13]; *Ahern v. Baker,* 148 Colo. 408, 366 P.2d 366 (1961); *Taylor v. Tinsley,* 138 Colo. 182, 330 P.2d 954 (1958). In addition, for a declaratory judgment to be binding, the necessary parties must be before the court. *City and County of Denver v. Denver Land Co.,* 85 Colo. 198, 274 P. 743 (1929). Here, neither party adduced evidence as to a number of the purposes for which the county requested a declaration of employee status nor were the individual employees joined in order that they might be bound by the court's determination. Consequently, it was inappropriate for the district court to rule that the employees of the district attorney's office were employees of the 17th

judicial district or to imply that they were employees of the county for a variety of purposes.

Judgment reversed.

---

13. *C.F. & I. Steel v. Colorado Air Pollution Control Commission,* 610 P.2d 85 (Colo.1980) stated that *Heron, supra* was over-ruled by *Colorado State Board of Optometric Examiners v. Dixon,* 165 Colo. 488, 440 P.2d 287 (1968). The result in *Heron* is inconsistent with that in *Dixon* but *Dixon* did not specifically overrule *Heron,* and the language in *Heron* that before a declaratory judgment is proper "there must be a judiciable issue or a legal controversy extant, and not a mere possibility that at some future time such a question may arise" remains viable. 411 P.2d at 315.