**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 20, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

STEADFAST INSURANCE
COMPANY,

      Plaintiff-Counter-Defendant-
Appellee,

v.

AGRICULTURAL INSURANCE
COMPANY, now known as Great
American Assurance Company,

      Defendant-Counter-Claimant-
Cross-Claimant-Appellant,

v.

GRAND RIVER DAM AUTHORITY,

      Defendant-Cross-Defendant-
Appellee.

No. 06-5212

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 05-CV-0126-CVE-SAJ)**

---

George W. Dahnke (Sarah J. Timberlake with him on the brief), Abowitz, Timberlake & Dahnke, P.C., Oklahoma City, Oklahoma, for Appellant.

Galen L. Brittingham (Michael P. Atkinson with him on the brief), Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, Tulsa, Oklahoma, for Appellee.

---

Before **KELLY**, **BALDOCK**, and **BRISCOE**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

_____

In several underlying actions, multiple claimants brought suit against the Grand River Dam Authority (GRDA) for damages related to a series of flood incidents, which began in 1992. Plaintiff Steadfast Insurance Company (Steadfast) serves as the GRDA's primary insurer. Steadfast filed this declaratory judgment action in federal court under 28 U.S.C. § 1332, seeking a ruling that it had no obligation to cover these underlying claims. Subsequently, Steadfast added Defendant Agricultural Insurance Company (Agricultural), the GRDA's excess liability insurer, to this action, alleging the possibility that the GRDA's excess liability policy might come into play.

Agricultural filed a counter-claim against Steadfast, and a cross-claim against the GRDA, requesting a declaratory judgment that it had no duty to indemnify the GRDA. The GRDA moved to dismiss both Steadfast's complaint and Agricultural's cross-claim based on its entitlement to Eleventh Amendment immunity. The district court ruled the GRDA was entitled to sovereign immunity and granted its motion to dismiss. The question presented on appeal is whether the GRDA is a state agency entitled to Eleventh Amendment immunity. See U.S. Const. amend. XI. We have jurisdiction under 28 U.S.C. § 1291, and affirm.[1]

I.

_____

[1] The district court entered a Fed. R. Civ. P. 54(b) certification order concluding no reason exists to delay appellate review of its final judgment dismissing a single party, the GRDA, from this lawsuit. We, therefore, have appellate jurisdiction under 28 U.S.C. § 1291.

2

The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Eleventh Amendment immunity's primary purpose is to accord states the respect owed them as joint sovereigns. See Fed. Mar. Comm'n v. S.C. State Ports Auth., 535 U.S. 743, 765 (2002). Consequently, state sovereign immunity applies to any action brought against a state in federal court, including suits initiated by a state's own citizens. See Edelman v. Jordan, 415 U.S. 651, 662-63 (1974). Eleventh Amendment immunity applies regardless of whether a plaintiff seeks declaratory or injunctive relief, or money damages. See Fed. Mar. Comm'n, 535 U.S. at 765-66.

The Eleventh Amendment does not automatically destroy a federal court's jurisdiction to decide lawsuits brought against a state. See Wis. Dept. of Corrs. v. Schacht, 524 U.S. 381, 389 (1998). Rather, the Eleventh Amendment grants states a legal power to assert sovereign immunity as a defense. See id. A state may, therefore, waive its sovereign immunity. See id. The decision to waive Eleventh Amendment immunity is, however, "altogether voluntary" and we will not readily find such a waiver. Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 675 (1999). In most cases, waiver of sovereign immunity occurs either when a state voluntarily invokes the jurisdiction of a federal court, or when a state makes a "clear declaration" that it intends to submit itself to a federal court's jurisdiction. Id. at 675-76. A state's removal of a case to federal court is a voluntary invocation of federal jurisdiction sufficient to waive that state's Eleventh

3

Amendment immunity.  See Lapides v. Bd. of Regents, 535 U.S. 613, 624 (2002).

In terms of scope, Eleventh Amendment immunity extends to states and state entities but not to counties, municipalities, or other local government entities.  See Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274, 280 (1977).  To determine the category into which a given entity falls, we consider whether that entity is, or is not, an "arm of the state."  Id.  The answer to this question depends, in large part, upon our analysis of the "nature of the entity created by state law."  Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 & n.5 (1997); Sturdevant v. Paulsen, 218 F.3d 1160, 1164 (10th Cir. 2000).  If a state entity is more like a political subdivision – such as a county or city – than it is like an instrumentality of the state, that entity is not entitled to Eleventh Amendment immunity.  See Mt. Healthy, 429 U.S. at 280; Sturdevant, 218 F.3d at 1164-65.

We look to four primary factors in determining whether an entity constitutes an "arm of the state."  Mt. Healthy, 429 U.S. at 280.   First, we assess the character ascribed to the entity under state law.  Simply stated, we conduct a formalistic survey of state law to ascertain whether the entity is identified as an agency of the state.  See Sturdevant, 218 F.3d at 1164, 1166.  Second, we consider the autonomy accorded the entity under state law.  This determination hinges upon the degree of control the state exercises over the entity.  See id. at 1162, 1164, 1166.  Third, we study the entity's finances.  Here, we look to the amount of state funding the entity receives and consider whether the entity has the ability to issue bonds or levy taxes on its own behalf.  See id.  Fourth, we ask whether the entity in question is concerned primarily with local or state affairs.  In answering this question, we examine the

4

agency's function, composition, and purpose.  See id. at 1166, 1168-69.

## II.

We recognize that we are not writing on a blank slate.  The GRDA has been in existence since 1935.  In the intervening period, the agency has been a party to multiple lawsuits in both state and federal courts.  For example, in Wyoming v. Oklahoma, 502 U.S. 437, 437 (1992), the Supreme Court referred to the GRDA as "a state agency."  We ourselves have stated the GRDA is an "agency of the State of Oklahoma."  Grand River Dam Auth. v. Fed. Power Comm'n, 246 F.2d 453, 454 (10th Cir. 1957); see also Dalrymple v. Grand River Dam Auth., 145 F.3d 1180, 1182 (10th Cir. 1998) (referring to the GRDA as "a state agency").  Because these categorizations of the GRDA are all likely dicta, however, we proceed to consider the status of the GRDA anew.  Eleventh Amendment immunity is a question of federal law and our review is de novo.  See Sturdevant, 218 F.3d at 1164.  We give deference to state court decisions regarding whether a given entity is an arm of the state, but we do not view these rulings as dispositive.  See id.

## A.

First, we examine the character of the GRDA under Oklahoma law.  The GRDA's foundational statute describes the GRDA as "a governmental agency of the State of Oklahoma."  82 Okla. Stat. § 861.  Other Oklahoma statutes also explicitly classify the GRDA as a state entity.  See 62 Okla. Stat. § 695.3(4) ("'State Governmental Entity' means the State of Oklahoma or any agency . . . or other instrumentality of state government . . . including . . . [the] Grand River Dam Authority."); 82 Okla. Stat. § 861A(A) ("The Grand

5

River Dam Authority . . . is a nonappropriated agency of the State of Oklahoma."). In addition, the Supreme Court of Oklahoma has declared, on more than one occasion, that the GRDA is an agency of the state. See Mustain v. Grand River Dam Auth., 68 P.3d 991, 1000 (Okla. 2003) (stating the GRDA "is a state agency"); Sheldon v. Grand River Dam Auth., 76 P.2d 355, 361 (Okla. 1938) (finding the GRDA was created "for the purpose of conducting a state function"). Both Oklahoma statutory and case law, therefore, expressly identify the GRDA as an agency of the state of Oklahoma.[2]

## B.

Second, we assess the extent of the State of Oklahoma's control over the GRDA. Oklahoma law circumscribes the GRDA's ability to deal freely with the property under its control. For example, Oklahoma law specifically prohibits the GRDA from encumbering its property. See 82 Okla. Stat. § 874. State law regulates the GRDA's acquisition and sale of property, as well as the GRDA's ability to lease the property it administers. See id. The Oklahoma Legislature has further precluded the GRDA from preventing the "free public use of its lands and lakes" for recreational purposes. Id. § 875(A).

Oklahoma law also regulates the GRDA's relationship with its employees. All GRDA employees are "state employees" generally "subject to the same benefits and restrictions" that apply to the employees of other state agencies. Id. § 861A(A). Various members of

---

[2] We note that in 62 Okla. Stat. § 695.3(4) & (5) the Oklahoma Legislature draws a clear distinction between a "State Governmental Entity," such as the "Grand River Dam Authority," and a "Local Governmental Entity," such as a county or city.

Oklahoma's executive and legislative branches have the power to appoint five of the GRDA's seven-member board of directors. See id. § 863.2(F). The Governor of Oklahoma retains the power to remove any director for "just cause." Id. § 863.2(M). Other GRDA employees are brought under the protection of the State of Oklahoma's Merit System. See 74 Okla. Stat. § 840-5.7. In addition, Oklahoma law requires the GRDA, and certain GRDA employees, to participate in the Oklahoma Law Enforcement Retirement System. See 47 Okla. Stat. § 2-315(B).

The State of Oklahoma also places restrictions on the GRDA's handling of its finances. Funds "generated, received and expended" by the GRDA are classified as "public funds." 82 Okla. Stat. § 861A(A). The GRDA's treatment of these funds is circumscribed by the same "state laws and regulations" that apply to the use of public funds by "all other state agencies." Id. In particular, Oklahoma imposes strict requirements for both the investment and disbursal of the GRDA's surplus funds. See id. § 865.

The GRDA is further subject to various auditing and reporting requirements. All state agencies, including the GRDA, must provide the Director of State Finance with information related to their income, disbursements, and other transfers of funds. See 62 Okla. Stat. § 7.3(A). More specifically, Oklahoma law prescribes the manner in which the GRDA's records must be kept and requires that all of the GRDA's accounts and contracts "be open to public inspection." 82 Okla. Stat. § 866; see also id. § 861A(C). Furthermore, Oklahoma law establishes the time and manner in which audits of the GRDA's accounts are performed. See id. § 866. The GRDA is required to provide the results of these audits to Oklahoma's

7

Governor, State Treasurer, State Auditor, and Director of State Finance. See id. All of this, suffice it to say, demonstrates that the State of Oklahoma exercises significant supervision and control over the GRDA's internal and external affairs.

C.

Third, we survey the GRDA's finances. The GRDA is an "unappropriated agency," which simply means the state's annual budget does not provide money for the agency's operations. 82 Okla. Stat. § 861A(A). Annual appropriations are unnecessary because the GRDA generates revenue. These revenues constitute "public funds . . . subject to state laws and regulations governing the receipt and expenditure of public funds in the same manner as all other state agencies." Id. Oklahoma law thus categorizes the GRDA's revenues as state funds. That these revenues never enter the confines of the state treasury is immaterial. Oklahoma law provides that the GRDA is liable for any damages it may cause. See id. § 862(s). Any judgment entered against the GRDA must be paid out of the GRDA's revenues. See id. § 869(A). These revenues are state funds.[3] See id. § 861A(A).

---

[3] Agricultural suggests the GRDA's revenues do not constitute state funds because they are not issued from the state treasury. This argument rests on the faulty assumption that all state funds must be held in the state treasury. A state may, however, choose to retain state funds elsewhere. In this case, Oklahoma allows the GRDA to retain most of the revenue it generates to fund its operations. This decision makes sense. Otherwise, the State of Oklahoma would have to engage in two additional actions to achieve the same result. First, the GRDA would have to send its revenues to the state treasury. Second, the state treasury would have to send these funds back to the GRDA. The focus of our financial analysis is on whether state funds are at stake, not on where such funds are held. See Regents of the Univ. of Cal., 519 U.S. at 430; Sturdevant, 218 F.3d at 1165.

The Oklahoma legislature has also invested the GRDA with the power "to issue revenue bonds for its corporate purposes," subject to the oversight of the State Bond Oversight Commission. Id. § 870; see also 62 Okla. Stat. § 695.2 et seq. Oklahoma law, however, specifically precludes the GRDA from levying taxes. See 82 Okla. Stat. § 861. We have previously held that the absence of taxing authority and the ability to issue bonds, with certain state guidance, renders an agency more like an arm of the state than a political subdivision. See Sturdevant, 218 F.3d at 1169-70. Consequently, we conclude that the GRDA's finances also indicate that it is an arm of the state.

D.

Fourth, we consider whether the GRDA is concerned primarily with local or state affairs. The Oklahoma Legislature created the GRDA as a "conservation and reclamation district," composed of sections of twenty four Oklahoma counties. 82 Okla. Stat. § 861. The GRDA's geographical scope, in tandem with its conservation function, suggests the agency was designed to fulfill a state purpose. In addition, employees of the GRDA are both classified and treated as state employees. See 82 Okla. Stat. § 861A(A); supra Part II.B. Thus, the GRDA's composition also indicates that it is an arm of the state.

Further, the GRDA oversees "the control, storing, preservation and distribution of the waters of the Grand River and its tributaries, for irrigation, power and other useful purposes." 82 Okla. Stat. § 861. The agency also regulates "the conservation and development of the forests, minerals, land, water and other resources" within its boundaries. Id. Oklahoma law grants the GRDA authority to promulgate safety rules for the lakes it administers, and allows

the agency to issue certain water-related permits and licenses. See 63 Okla. Stat. § 4204; id. § 4205; 82 Okla. Stat. § 875; id. § 889. The GRDA's functions thus mirror the conservation and regulatory missions of state-run utilities, parks, and recreation areas across the nation.[4] We have no difficulty in concluding the GRDA is primarily concerned with state, rather than local, affairs.

## III.

Based on the foregoing analysis, we hold the GRDA is an agency of the State of Oklahoma and is thus entitled to claim Eleventh Amendment immunity from suit in federal court. Of course, this immunity may be waived. See Lapides, 535 U.S. at 618. Agricultural alleges the GRDA waived its sovereign immunity in the present case when it removed an underlying action to federal court. Consequently, we proceed to determine whether the GRDA has effectively waived its sovereign immunity.

An arm of the state may waive its sovereign immunity by removing a case to federal court. See Schrier v. Univ. of Colo., 427 F.3d 1253, 1268 (10th Cir. 2005). Waiver-by-removal, only occurs, however, when a state "purposefully seeks a federal forum." Id. The case before us originated in federal court. As a result, the GRDA never had the opportunity

---

[4] We find no merit in Agricultural's assertion that the GRDA does not function as a state sovereign because the Federal Government heavily regulates some of its activities. Many state pursuits are subject to federal regulation. Absent a valid waiver of state sovereign immunity – either by Congress or the state – federal regulation has no impact on a state's, or its agencies', sovereign status. See MCI Telecomms. Corp. v. Pub. Servs. Admin., 216 F.3d 929, 935-37 (10th Cir. 2000); see also MCI Telecomms. Corp v. Bell Atlantic-Pennsylvania, 271 F.3d 491, 504-06 (3d Cir. 2001).

10

to seek out a federal forum.  The waiver-by-removal doctrine, therefore, cannot apply.[5]

A state entity may also waive its sovereign immunity by voluntarily invoking federal court jurisdiction.  See McLaughlin v. Bd. of Trustees of State Colls., 215 F.3d 1168, 1170 (10th Cir. 2000).  Litigating the merits of a claim may serve as a voluntary invocation of federal court jurisdiction sufficient to waive a state entity's sovereign immunity.  See id.; Estes v. Wyo. Dept. of Transp., 302 F.3d 1200, 1205 (10th Cir. 2002).  Here, the GRDA immediately contested federal court jurisdiction based on its right to Eleventh Amendment immunity.  We, therefore, hold that the GRDA has not waived its sovereign immunity in the present case.

AFFIRMED.

---

[5]  Agricultural's waiver argument is similarly without merit.  Whether the GRDA has occasionally chosen to remove a lawsuit filed in state court to federal court – or decided not to assert its sovereign immunity when faced with other suits filed in federal court – has no bearing on whether the GRDA has waived its sovereign immunity in the case now before us.  See Schacht, 524 U.S. at 389.