FILED
United States Court of Appeals
Tenth Circuit

June 27, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MICHAEL VAN DE WEGHE,

     Plaintiff - Appellant,

v.

CAROL CHAMBERS, District Attorney, 18th Judicial District, in her official capacity; JAY WILLIFORD, Deputy District Attorney, 18th Judicial District, in his personal capacity; DETECTIVE GREGORY HOWDEN, Douglas County Sheriff's Office, in his personal capacity; DEPUTY JASON WALTER, Douglas County Sheriff's Office, in his personal capacity,

     Defendants - Appellees.

No. 13-1121
(D.C. No. 1:11-CV-02315-RPM)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **GORSUCH**, **MATHESON**, and **BACHARACH**, Circuit Judges.

Little but grief has come of the loan Michael Van De Weghe gave his

girlfriend. After the relationship's end, he had to turn to small claims court to get

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

his money back. Making matters worse, he discovered during the litigation that his ex-girlfriend had erased the word "loan" from the memo line of the checks he'd written her. Finding this dishonesty more than he could bear, he made certain to rewrite the word on the checks before entering them in evidence. In the end, the small claims court sided with Mr. Van De Weghe, but that hardly proved the end of his troubles. Soon enough his ex-girlfriend answered by filing a police complaint alleging that he misled the small claims court by altering evidence. And soon after that investigating officers and prosecutors brought criminal charges against him. To be sure, the charges were dropped eventually — after Mr. Van De Weghe's ex-girlfriend effectively admitted that she was the one who tampered with the evidence first. But Mr. Van De Weghe wants compensation for the trouble visited on him while those charges were pending. He seeks compensation, though, not from the troublesome ex-girlfriend but from the police officers and prosecutors who were taken in by her. This much the district court held it could not provide in light of the immunities the officers and prosecutors enjoy as a matter of law. And after careful review we are unable to say the court erred in holding as it did.

Before us Mr. Van De Weghe asserts that officers Gregory Howden and Jason Walter and Deputy District Attorney Jay Williford maliciously pursued the case against him. And he rightly notes that police officers and prosecutors who maliciously pursue charges without probable cause may indeed be liable under the

federal constitution and 42 U.S.C. § 1983 to the innocents they injure. *See, e.g.*, *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008); *Pierce v. Gilchrist*, 359 F.3d 1279, 1294-96 (10th Cir. 2004).[1]

But to this the defendants reply that under the doctrine of qualified immunity they are presumptively immune from lawsuits seeking damages for actions they took doing their jobs on behalf of the state. To overcome this presumption, they stress, Mr. Van De Weghe bears the burden of showing not only that (1) the defendants violated his constitutional rights but also that (2) the rights in question were clearly established at the time of the alleged violation. *Kerns v. Bader*, 663 F.3d 1173, 1180 (10th Cir. 2011); *see also Wood v. Moss*, 134 S. Ct. 2056, 2066-67 (2014); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). And, the defendants contend, Mr. Van De Weghe has failed to carry these dual burdens.

With this much, we are constrained to agree. Mr. Van De Weghe's own complaint admits facts showing that the defendants *had* probable cause to pursue at least one charge against him — tampering with evidence. To be sure, nothing compelled the defendants to bring the charge against Mr. Van De Weghe and

---

[1] Although Mr. Van De Weghe's complaint nominally raises a false arrest claim in addition to a malicious prosecution claim, he devotes all his appellate briefing to the latter and we accordingly treat the false arrest claim as waived. *See, e.g.*, *United States v. Patterson*, 713 F.3d 1237, 1250 (10th Cir. 2013) ("By failing to develop any argument on this claim at this court, [the appellant] has waived the claim." (emphasis omitted)).

many of the facts that emerged surely supported the defendants' discretionary decision to drop the charge. But it is also beyond question that, even in light of all the facts presented by Mr. Van De Weghe's complaint, the defendants possessed probable cause to pursue an evidence tampering charge at every point in the proceedings — and thus cannot be said to have engaged in malicious prosecution. In Colorado, after all, a person commits the crime of evidence tampering if, "believing that an official proceeding is pending or about to be instituted and acting without legal right or authority, he . . . [k]nowingly . . . offers any false or altered physical evidence with intent that it be introduced in the pending or prospective official proceeding." Colo. Rev. Stat. § 18-8-610. Meanwhile, Mr. Van De Weghe's own complaint concedes that he "entered the cancelled checks into evidence after he restored the word 'loan' on the memo lines." Aplt. App. at 10. So it is that Mr. Van De Weghe all but agrees he knowingly offered altered physical evidence with the requisite intent and beliefs. He identifies no authority, moreover, suggesting his ex-girlfriend's alteration of the checks gave him "legal right or authority" to alter them once more. Rarely, after all, do two wrongs make a right in life or the law.

Still, even if the officers and prosecutor had probable cause for thinking him guilty of evidence tampering, Mr. Van De Weghe insists they didn't have probable cause to believe he'd committed some of the other crimes he was charged with — including theft and perjury. But even if we assume this is just as

- 4 -

Mr. Van De Weghe alleges, he still faces a problem. He still has not identified any clearly established law suggesting that a claim for malicious prosecution lies when one charge is supported by probable cause but other simultaneous charges arising from the same set of facts are not. Put differently, he hasn't borne his burden of demonstrating that the law is clear that an individual may pursue a claim for malicious prosecution when at least *some* of the charges against him *were* supported by probable cause. The failure to carry that burden is fatal to his claim. *See, e.g.*, *Derda v. City of Brighton*, 53 F.3d 1162, 1164 (10th Cir. 1995).

Though this court bears no obligation to conjure arguments for the parties, as it happens our own research has turned up little that might've helped Mr. Van De Weghe carry his burden anyway. The Third Circuit has expressly held that probable cause to pursue one charge "preclude[s] the plaintiff from proceeding with [a] malicious prosecution claim with respect to any" other charge brought simultaneously against her and arising from the same set of facts. *Kossler v. Crisanti*, 564 F.3d 181, 193-94 & n.8 (3d Cir. 2009) (en banc); *see also Ruff v. Eckerds Drugs, Inc.*, 220 S.E.2d 649, 651 (S.C. 1975) ("[A]n action for malicious prosecution should not be available, where, as here, both charges arise out of the same set of circumstances."). True, at least two other circuits disagree, reasoning that "when it comes to prosecution, the number and nature of the charges matters" — extra charges may impose extra costs and each may be attacked separately. *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007); *accord*

*Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991). But this court hasn't definitively spoken to the question either way. We have case law suggesting that a malicious prosecution claim arises when "there was *no* probable cause to support the . . . prosecution," a formulation that at least arguably leans the Third Circuit's way. *Novitsky v. City of Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007) (emphasis added). But in an unpublished decision we seem to have assumed something closer to the Second and Seventh Circuit's view, though without acknowledging or considering the split of authority. *See Miller v. Spiers*, 339 F. App'x 862, 867-68 (10th Cir. 2009). In these circumstances — without a binding opinion from the Supreme Court, with uncertain signals in this court, and with other courts unmistakably divided — it becomes difficult to conjure how Mr. Van De Weghe might have cleared the "clearly established law" hurdle even if he had tried. *See, e.g.*, *Wilson v. Layne*, 526 U.S. 603, 618 (1999) ("If judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy.").[2]

That leaves us with Mr. Van De Weghe's separate claim against Carol Chambers in her official capacity as District Attorney for Colorado's 18th Judicial District. According to Mr. Van De Weghe, Ms. Chambers "knowingly

---

[2] Having held Mr. Williford, the prosecutor, entitled to qualified immunity, we have no need to reach his alternative argument that he is entitled to absolute immunity as "a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution." *Kalina v. Fletcher*, 522 U.S. 118, 124 (1997) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976)).

- 6 -

established a policy that encouraged prosecutorial misconduct . . . by paying a cash bounty in exchange for felony convictions without regard to how the convictions are obtained." Aplt. App. at 25. The district court dismissed this claim after determining that Ms. Chambers, in her role as District Attorney, qualified as an "arm of the state" of Colorado entitled to sovereign immunity under the Eleventh Amendment as it has been interpreted by the Supreme Court. *See, e.g.*, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-73 (2000); *Elwell v. Oklahoma ex rel. Bd. of Regents*, 693 F.3d 1303, 1310 (10th Cir. 2012).

We can find no error in the district court's conclusion on this score either. In fact, its conclusion was compelled by this court's precedent. In *Rozek v. Topolnicki*, this court held unequivocally that Ms. Chambers's very office — District Attorney for Colorado's 18th Judicial District — *does* share in the state's sovereign immunity. 865 F.2d 1154, 1158 (10th Cir. 1989). We reached that conclusion because, among other things, the 18th Judicial District encompasses multiple Colorado counties and because the Colorado Supreme Court has described the District Attorney as "an executive officer of the state." *Id.* (citing *Beacom v. Bd. of Cnty. Comm'rs*, 657 P.2d 440, 445 (Colo. 1983)).

Mr. Van De Weghe acknowledges our holding in *Rozek* but argues it no longer represents good law. He notes that whether an entity is entitled to state sovereign immunity turns, "in large part, upon our analysis of the nature of the entity created by state law." *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250,

- 7 -

1253 (10th Cir. 2007) (internal quotation marks omitted). Arms of the state itself generally receive immunity; political subdivisions, including (paradigmatically) cities, usually do not. *Id.* Since *Rozek*, Mr. Van De Weghe says, the Colorado Supreme Court has clarified in *Davidson v. Sandstrom* that the office of District Attorney is a political subdivision under state law, not an instrumentality of the State's Executive. *See* 83 P.3d 648, 656 (Colo. 2004).

The trouble is *Davidson* held no such thing. The decision held only that the state's *judicial districts* (not District Attorneys assigned to them) are political subdivisions of the state. *Id.* ("We therefore hold that the plain meaning of 'any other political subdivision' in [Colo. Const. art. XVIII, § 11(1)] encompasses *judicial districts*." (emphasis added)). Admittedly, on the way to this holding the court did say *District Attorneys* bear *one* "characteristic of a political subdivision — political control by some community other than the state as a whole." *Id.* But the court didn't question the many of its other decisions uniformly describing a Colorado District Attorney as a "state public officer" who "belongs to the executive branch." *Tisdel v. Bd. of Cnty. Comm'rs*, 621 P.2d 1357, 1361 (Colo. 1980); *People ex rel. VanMeveren v. Dist. Court*, 527 P.2d 50, 52 (Colo. 1974); *see also, e.g.*, *Free Speech Def. Comm. v. Thomas*, 80 P.3d 935, 937 (Colo. Ct. App. 2003); *Anderson v. Cnty. of Adams*, 592 P.2d 3, 4 (Colo. Ct. App. 1978). Neither did the court question Colorado statutes expressly providing that District Attorneys appear on "behalf of the state" and may appear in court outside their

particular districts "on behalf of" and "represent[ing] the people of the state of Colorado" as a whole.  Colo. Rev. Stat. § 20-1-102(1), (3).  In fact, the court favorably quoted a passage from an earlier Colorado Supreme Court case holding squarely that "[t]he district attorney is an executive officer of the state."  *Davidson*, 83 P.3d at 655 (quoting *Beacom*, 657 P.2d at 445).  Given all these features of the decision, we simply cannot say that *Davidson* meant to throw *Rozek*'s analysis or conclusion overboard.  *See Bragg v. Office of the Dist. Attorney*, 704 F. Supp. 2d 1032, 1064-67 (D. Colo. 2009) (a thoughtful opinion by a district court colleague reaching same conclusion we have about *Davidson*).[3]

That Mr. Van De Weghe has been through a lot of trouble, if perhaps some of his own creation, we do not doubt.  But neither can we say — as we must for him to prevail — that he has clearly overcome the immunities granted by law to officers and prosecutors charged with the often tricky job of sorting through conflicting evidence, choosing charges, and protecting the integrity of the legal process.  The judgment is affirmed.

ENTERED FOR THE COURT

Neil M. Gorsuch
Circuit Judge

---

[3]  Even if *Davidson* did speak more clearly in favor of overruling *Rozek*, we doubt we'd have any obligation to do so.  Although we typically "give deference to state court decisions regarding whether a given entity is an arm of the state . . . we do not view these rulings as dispositive."  *Steadfast Ins. Co.*, 507 F.3d at 1253.