**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 12, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DELARICK HUNTER, also known
as Delarick Evans,

      Plaintiff-Appellant,

v.

JOEL M. YOUNG, in his official and
individual capacity as a Sergeant of
the Wyandotte County Detention
Center,

      Defendant-Appellee.

No. 06-3371
(D.C. No. 05-CV-3074-MLB)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **McCONNELL**, **PORFILIO**, and **BALDOCK**, Circuit Judges.

Delarick Hunter, formerly a detainee at the Wyandotte County Detention

Center in Kansas City and currently a prisoner in the Lansing Correctional

Facility, appeals the district court's dismissal of his 42 U.S.C. § 1983 claim for

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

monetary damages against Sergeant Joel M. Young, a sheriff's officer at the detention center, in his official and individual capacities. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

I.

On February 15, 2004, Mr. Hunter was held in the Wyandotte County Detention Center pending sentencing, in lockdown status for disciplinary reasons. While receiving his daily medication in his cell, he was involved in a physical altercation with deputies not named as defendants in this case. The deputies used force to subdue and handcuff him. Mr. Hunter, who sustained a cut on his upper lip during the incident, was briefly left in his cell.[1]

Shortly afterwards, Sgt. Young arrived to assist the other deputies, who needed to re-enter the cell to retrieve dropped keys. Mr. Hunter was standing and looking out of his cell window. Sgt. Young ordered Mr. Hunter to sit on his bunk. When Mr. Hunter did not heed the order, Sgt. Young warned that he would use a taser gun. In the face of further noncompliance, Sgt. Young opened the cell and fired the taser twice at Mr. Hunter, hitting him in the upper and lower back. Sgt. Young then recovered the keys and a nurse entered the cell to examine, wash,

---

[1]     In connection with this incident, Mr. Hunter was later convicted of two counts of battery on a law enforcement officer and sentenced to a term of 152 months of confinement in the Kansas Department of Corrections.

and bandage the minor wounds Mr. Hunter received in the earlier fracas with the deputies and from the taser hits.

In the wake of the taser deployment, Mr. Hunter filed suit against the Sheriff of Wyandotte County, alleging the use of excessive force and also delay or denial of appropriate medication for his HIV-positive condition. The Sheriff prepared and filed a report detailing the factual record, pursuant to *Martinez v. Aaron*, 570 F.2d 317, 319-20 (10th Cir. 1978). Mr. Hunter filed a response to the report, admitting only that the initial altercation took place and that he had been shot with the taser gun.

Through later filings, Mr. Hunter amended his complaint to modify the claims against the Sheriff and add an excessive-force claim against Sgt. Young. The Sheriff was dismissed from the case and Sgt. Young moved for summary judgment on qualified-immunity grounds. The district court granted the motion, determining that the Eleventh Amendment barred the official-capacity claim and that qualified immunity shielded Sgt. Young from liability on the individual-capacity claim. Mr. Hunter now appeals the district court's decision.

## II.

"We review the district court's holding on summary judgment and the Eleventh Amendment de novo." *Callahan v. Poppell*, 471 F.3d 1155, 1158 (10th Cir. 2006). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Cooperman v. David*, 214 F.3d 1162, 1164 (10th Cir. 2000) (quoting Fed. R. Civ. P. 56(c)). "[A] mere factual dispute will not preclude summary judgment; instead, there must be a genuine issue of material fact." *Id*. "[T]he substantive law will identify which facts are material," and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. Mr. Hunter is representing himself on appeal so his pleadings will be construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

### Official-capacity claim

It is well-settled that a request for money damages against a state defendant in his official capacity is generally barred by the Eleventh Amendment to the Constitution. *See White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996). Although the "state may waive its Eleventh Amendment immunity," the waiver "must be unequivocal . . . stated by the most express language or by such overwhelming implication from the text of a state statutory or constitutional provision as will leave no room for any other reasonable construction." *Johns v. Stewart*, 57 F.3d 1544, 1553 (10th Cir. 1995) (quotations and alterations omitted).

Mr. Hunter asserts that Kansas waived its immunity by enacting Kan. Stat. § 19-811, which provides that a county sheriff has "charge and custody of the jail of his county" and that the sheriff and "his sureties shall be liable" for the acts of "his deput[ies] or jailer[s]." This general language cannot be reasonably construed as a waiver of Kansas's immunity against § 1983 prisoner claims in the federal courts. Because Mr. Hunter's requested relief is for only monetary damages, sovereign immunity bars his claim against Sgt. Young in his official capacity.

## Individual-capacity claim

The district court also determined that Sgt. Young was entitled to qualified immunity on Mr. Hunter's claim that the use of the taser gun amounted to excessive force in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. When a defendant invokes the defense of qualified immunity, a plaintiff must "satisfy a heavy two-part burden to avoid summary judgment: (1) that the defendant's actions violated a constitutional or statutory right and (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Serna v. Colo. Dep't of Corrs.*, 455 F.3d 1146, 1150 (10th Cir. 2006) (quotation omitted). The district court resolved the matter at the first step, holding that Mr. Hunter had not demonstrated any constitutionally prohibited conduct.

Whether force is constitutionally excessive depends upon the circumstances confronting the officer and the nature and amount of force applied by the officer. *See Whitley v. Albers*, 475 U.S. 312, 321 (1986). Whether an officer's conduct was reasonable is evaluated from the viewpoint of a reasonable officer at the scene. *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001). As the district court noted, "[t]he 'core inquiry' . . . is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Serna*, 455 F.3d at 1152 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). "We can infer malicious, sadistic intent from the conduct itself where 'there can be no legitimate purpose' for the officers' conduct." *Id.* (quoting *Smith v. Cochran*, 339 F.3d 1205, 1213 (10th Cir. 2003)).

Federal courts have held that the use of a taser or similar stun gun is not per se unconstitutional when used to compel obedience by inmates. *See Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004) (holding that a "single use of the taser gun causing a one-time shocking" against a "hostile, belligerent, and uncooperative" arrestee in order to effectuate the arrest was not excessive force in the totality of the circumstances); *Jasper v. Thalacker*, 999 F.2d 353, 354 (8th Cir. 1993) (using stun gun to subdue an unruly inmate did not violate Eighth Amendment where plaintiff failed to prove that the officers used the stun gun "sadistically or maliciously" to cause harm); *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992) (use of stun gun against disruptive prisoner to restore

-6-

discipline and order does not violate Eighth Amendment); *Michenfelder v. Sumner*, 860 F.2d 328, 336 (9th Cir. 1988) (policy of allowing use of taser guns on inmate who refuses to submit to a strip search does not constitute cruel and unusual punishment). And "this is so whether the inmate is locked in his prison cell or is in handcuffs." *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984) (discussing use of "mace, tear gas, or other chemical agents" against inmates). Courts "should . . . be extremely cautious before attempting to prohibit or limit the necessary means" prison officials use to carry out their responsibilities. *Id.*

The evaluation of Mr. Hunter's excessive-force claim, as considered from Sgt. Young's vantage point, is not dependent upon a resolution of disputed facts.[2] Both Mr. Hunter's submissions and the *Martinez* report indicate that Sgt. Young sought to enter Mr. Hunter's cell with an awareness that a physical altercation had just taken place and that Mr. Hunter was in lockdown. Sgt. Young ordered Mr. Hunter to go to his bunk and Mr. Hunter did not comply.

Mr. Hunter alleges that the other officers were responsible for the initial altercation, that he was asking for a jail supervisor, and that his physical condition prevented him from following Sgt. Young's orders. He does not allege, however, that Sgt. Young was aware of Mr. Hunter's version of the preceding

---

[2] For this reason, we need not reach Mr. Hunter's argument that the district court improperly relied on the version of the facts presented in the *Martinez* report.

incident or that he perceived Mr. Hunter's allegedly impaired physical condition. Instead, Mr. Hunter suggests that Sgt. Young should "have asked [him] why [he] didn't sit, once [Sgt. Young] opened the door," so that he "could have told him the pains [he] was having in [his] hip and legs." Reply Br. at 5.

We decline to second guess Sgt. Young's "split-second judgments" about the necessary amount of force made in these "tense, uncertain, and rapidly evolving" circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989). Mr. Hunter has not demonstrated that use of the taser was objectively unreasonable and therefore violated his constitutional right under the Eighth Amendment. As a result, qualified immunity shields Sgt. Young from Mr. Hunter's pursuit of an excessive-force claim.

### III.

The district court's judgment is AFFIRMED. Mr. Hunter is reminded that he is obligated to continue making partial payments toward the balance of his assessed fees and costs until they are paid in full.

Entered for the Court

Michael W. McConnell
Circuit Judge