**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

WENDY COUSER, individually and as
administrator of the Estate of Matthew
Holmes,

     Plaintiff - Appellee,

v.

CHAD GAY, in his individual and official
capacity as Sheriff of Harvey County,

     Defendant - Appellant,

and

CHRIS SOMERS; ANTHONY HAWPE;
JASON ACHILLES; SKYLER HINTON;
JERRY MONTAGNE, in his individual and
official capacity as Sheriff of McPherson
County; CITY OF NEWTON, KANSAS;
UNKNOWN OFFICERS, from Newton Police
Department; UNKNOWN OFFICERS, from
McPherson County Sheriff's Office;
UNKNOWN OFFICERS, from Harvey
County Sheriff's Office; MCPHERSON
COUNTY SHERIFF'S OFFICE; HARVEY
COUNTY SHERIFF'S OFFICE,

     Defendants.

------------------------------

KANSAS SHERIFF'S ASSOCIATION,

     Amicus Curiae.
_____

No. 19-3088

Appeal from the United States District Court
for the District of Kansas
(D.C. No. 6:18-CV-01221-JWB-GEB)
_____

Toby Crouse, Crouse, LLC, Overland Park, Kansas, (David E. Rogers and Kelsey N. Frobisher, Foulston Siefkin LLP, Wichita, Kansas, with him on the briefs), for Defendant – Appellant.

Debra Loevy, Loevy & Loevy, Chicago, Illinois, for Plaintiff – Appellee.

Allen G. Glendenning and Michael C. Abbott, Watkins Calcara, CHTD, Great Bend, Kansas, filed an amicus curiae brief for Kansas Sheriffs' Association on behalf of Defendant – Appellant.
_____

Before **MATHESON**, **KELLY**, and **PHILLIPS**, Circuit Judges.
_____

**MATHESON**, Circuit Judge.
_____

The district court found that Chad Gay, the Sheriff of Harvey County, Kansas, is a county official when performing law enforcement functions. It thus held that, unlike a state official, he is not entitled to Eleventh Amendment immunity when sued for damages in his official capacity under 42 U.S.C. § 1983. Exercising jurisdiction under 28 U.S.C. § 1981, we affirm.

## I. BACKGROUND

### A. *Factual Background*

In August 2017, Kansas law enforcement officers, after a traffic chase, pulled over Matthew Holmes for suspected vehicular burglary. The officers were from the City of Newton Police Department ("NPD"), McPherson County Sheriff's Office ("MCSO"),

and Harvey County Sheriff's Office ("HCSO"). After Mr. Holmes stopped and exited the car, officers wrestled him to the ground. McPherson County Sheriff's Deputy Chris Somers shot Mr. Holmes in the back. Mr. Holmes later died from the gunshot wound.

## B. *Procedural Background*

### 1. The Estate's Complaint

In 2018, Mr. Holmes's estate (the "Estate") sued, alleging constitutional violations under 42 U.S.C. § 1983 and a state law claim.[1] The complaint named as defendants the MCSO, HCSO, City of Newton, McPherson County, and Harvey County. It also named four officers in their individual capacities and Harvey County Sheriff Chad Gay and McPherson County Sheriff Jerry Montagne in both their individual and official capacities. The official capacity claims against the sheriffs sought to impose municipal liability for the alleged "policy and practice" of "failing to adequately train, supervise, control and discipline its officers." App. at 30. The Estate sought only damages.

### 2. District Court Order

The Defendants brought various motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Sheriff Gay and Sheriff Montagne moved to dismiss the official capacity claims against them, arguing they were state actors entitled to Eleventh

---

[1] Mr. Holmes's mother, Wendy Couser, is the court-appointed administrator for the Estate.

Amendment immunity and that the complaint otherwise did not adequately allege municipal liability claims for failure to train or supervise.

The district court granted in part and denied in part the Defendants' Rule 12(b)(6) motions. *See Estate of Holmes by and through Couser v. Somers*, 387 F. Supp. 3d 1233, 1264 (D. Kan. 2019). In particular, it denied each sheriff's motion to dismiss based on Eleventh Amendment immunity because, "with respect to local law enforcement activities, sheriffs are not arms of the state but rather of the county that they serve." *Id.* at 1259. In reaching this conclusion, the district court addressed the four factors set forth in *Steadfast Ins. Co. v. Agricultural Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007), to determine whether a defendant official is a state or local actor. It said:

> (1) Kansas "state law characterizes a sheriff as a county officer when the sheriff is implementing law enforcement policies," *Couser*, 387 F. Supp. 3d at 1259;
>
> (2) Sheriffs "have autonomy from state control" in "setting policy on the use of force," *id.* at 1260-61;
>
> (3) "The sheriff's annual budget is determined by the board of county commissioners and not the state," *id.* at 1261; and
>
> (4) "Kansas law supports a finding that the sheriff deals primarily with local concerns," *id.*

The district court also denied Sheriff Gay's motion to dismiss the municipal liability claim against him, but it granted Sheriff Montagne's similar motion, thereby dismissing all pending claims against him. *See id.* at 1261-63 (explaining the Estate had

4

stated a claim for failure-to-train or supervise against Sheriff Gay but not Sheriff

Montagne).

Sheriff Gay timely appealed the Eleventh Amendment ruling.[2]

## C. *Legal Background*

### 1. **Eleventh Amendment Immunity for State Officers**

Eleventh Amendment immunity applies not only to a state but also to an entity that

is an arm of the state. *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

Damage claims against state officials in their official capacity are deemed to be against

the state entity the official represents and are therefore barred by the Eleventh

Amendment.[3] *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (Eleventh Amendment

immunity is "in effect when State officials are sued for damages in their official

capacity"); *Brandon v. Holt*, 469 U.S. 464, 471 (1985) ("[A] judgment against a public

---

[2] A denial of Eleventh Amendment immunity is immediately appealable under the collateral order doctrine. *See Will v. Hallock*, 546 U.S. 345, 350 (2006) (explaining a "decision denying [a State's] claim to Eleventh Amendment immunity" is immediately appealable); *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147 (1993) ("We hold that States and state entities that claim to be 'arms of the State' may take advantage of the collateral order doctrine to appeal a district court order denying a claim of Eleventh Amendment immunity.").

[3] The Eleventh Amendment provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

5

servant in his official capacity imposes liability on the entity that he represents . . . ." (quotations omitted)).

The Supreme Court "has repeatedly refused to extend [Eleventh Amendment] sovereign immunity to counties." *Northern Ins. Co. of New York v. Chatham Cty.*, 547 U.S. 189, 193 (2006); *accord Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977) (Eleventh Amendment immunity "does not extend to counties and similar municipal corporations"). It follows that county officers sued for damages in their official capacity are generally not entitled to Eleventh Amendment immunity.[4]

2. **County or State Representative**

Two sources of authority guide our analysis of whether a sheriff represents the county or state. First, in cases such as *Mt. Healthy* and *Steadfast*, the Supreme Court and the Tenth Circuit developed a framework to determine whether a defendant government entity is a (1) state entity or (2) a county, municipal, or other local government entity.[5] Second, in *McMillian v. Monroe County*, 520 U.S. 781, 785-86 (1997), the Supreme

---

[4] But an official-capacity claim against a county officer is barred if payable out of the state treasury. *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 123 n.34 (1984) ("[T]he Eleventh Amendment does not apply to counties and similar municipal corporations. At the same time, we have applied the Amendment to bar relief against county officials in order to protect the state treasury from liability that would have had essentially the same practical consequences as a judgment against the State itself." (citations and quotations omitted).

[5] *See, e.g.*, *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 401-02 (1979) (holding regional planning agency created by a compact between California and Nevada was not a state entity); *Ambus v. Granite Bd. of Educ.*, 995 F.2d 992, 994 (10th Cir. 1993) (holding Utah school districts are not a state entity).

Court addressed whether an Alabama sheriff sued in his official capacity was a state or county official for purposes of a § 1983 claim.

These two sources overlap in this case. Courts use the *Mt. Healthy/Steadfast* factors to determine whether an entity is state or local. And they look to *McMillian* to inform whether a sheriff is a state or local official.

We describe both sources of authority below.

a. Mt. Healthy *and* Steadfast *arm-of-the-state inquiry*

i. *Mt. Healthy*

In *Mt. Healthy*, the Supreme Court addressed whether an Ohio school district was "an arm of the State partaking of the State's Eleventh Amendment immunity," or "a municipal corporation . . . to which the Eleventh Amendment does not extend." 429 U.S. at 280. The *Mt. Healthy* Court considered the school district's (1) designation under state law as a "political subdivision"; (2) supervision by the State Board of Education; (3) significant state funding; and (4) ability to generate its own revenue by issuing bonds and levying taxes. *Id.* Although the second and third factors suggested the school board was an arm of the state, the Court determined that, "[o]n balance," the school board was "more like a county or city." *Id.* at 280-81.

The circuit courts have articulated a variety of formulas to flesh out the *Mt. Healthy* arm-of-the-state framework. *See* Martin A. Schwartz, *Sec. 1983 Litig. Claims & Defenses* § 8.10 (4th Edition 2020-1 Supp.). The Tenth Circuit did so in *Steadfast*.

7

ii. *Steadfast*

In *Steadfast*, we addressed whether the Grand River Dam Authority ("GRDA"), an Oklahoma nonprofit agency, was an arm of the state. 507 F.3d at 1256. We "look[ed] to four primary factors in determining whether a[] [defendant] constitutes an 'arm of the state.'" *Id.* at 1253 (quoting *Mt. Healthy*, 429 U.S. at 280); *accord Ambus v. Granite Bd. of Educ.*, 995 F.2d 992, 994 (10th Cir. 1993) (en banc) (explaining "[t]he [*Mt. Healthy*] Court ruled four factors to be relevant").[6] These four factors are:

> (1) "the character ascribed to the [defendant] under state law";
>
> (2) "the autonomy accorded the [defendant] under state law;
>
> (3) "the [defendant's] finances"; and
>
> (4) "whether the [defendant] in question is concerned primarily with local or state affairs."

*Steadfast*, 507 F.3d at 1253 (citations omitted).

We determined that each factor supported finding GRDA to be an arm of the state. *Id.* at 1252-56. First, GRDA's foundational statute, other Oklahoma statutes, and the Oklahoma Supreme Court described GRDA as an agency of the state. *Id.* at 1253-54. Second, the state "exercise[d] significant supervision and control" over GRDA. *Id.* at

---

[6] Before *Steadfast*, we treated the arm-of-the-state inquiry as a two-factor test that embodied the same overall factors as in *Steadfast*. *See, e.g.*, *Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir. 2000); *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 574-75 (10th Cir. 1996).

1254-55 (explaining Oklahoma law limited GRDA's authority over its property, lands, employees, board of directors, and finances). Third, although GRDA could issue bonds, it lacked taxing authority and its revenue was designated as "state funds." *Id.* at 1255. Fourth, GRDA was "primarily concerned with state, rather than local, affairs" because it serviced 24 Oklahoma counties and its employees were "classified and treated as state employees." *Id.* at 1255-56. We thus held that "GRDA is an agency of the State of Oklahoma . . . entitled to claim Eleventh Amendment immunity . . . ." *Id.* at 1256.

    b.  McMillian – *Whether an Alabama sheriff is a state or local official*

In *McMillian v. Monroe County*, a former prisoner sued Monroe County, Alabama under § 1983 for damages arising from allegedly unconstitutional actions taken by the Monroe County sheriff. 520 U.S. at 783-84. The prisoner's conviction for capital murder had been overturned because the sheriff suppressed exonerating evidence. *Id.* at 783. The county argued that it could not be liable for the sheriff's actions because he was a state policymaker. *Id.* at 784. The question presented to the Supreme Court was "whether Alabama sheriffs are policymakers for the State or for the county when they act in a law enforcement capacity." *Id.* at 785. The Court held that "Alabama sheriffs, when executing their law enforcement duties, represent the State of Alabama, not their counties." *Id.* at 793.[7]

---

[7] *McMillian* did not address Eleventh Amendment immunity because the prisoner sued only the county.

9

The *McMillian* Court's "inquiry [was] guided by two principles." *Id.* at 785. First, the sheriff's state or municipal status depends on his specific function "in a particular area, or on a particular issue." *Id.* The Court addressed the Alabama sheriff's law enforcement capacity, not "a characterization of Alabama sheriffs that [would] hold true for every type of official action." *Id.* at 785-86. Thus, an official may be considered a state official for the purpose of one function and a municipal official for another.

Second, like the *Mt. Healthy/Steadfast* arm-of-the-state inquiry, the *McMillian* Court's inquiry is "dependent on an analysis of state law." *Id.* at 786. The Court explained that "our understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law." *Id.* There is thus "no inconsistency created by court decisions that declare sheriffs to be county officers in one State, and not in another" because states have "wide authority to set up their state and local governments as they wish." *Id.* at 795.[8]

---

[8] Most circuit courts to address the issue have concluded that a sheriff acting in a law enforcement function is a county actor. *See, e.g.*, *Williams v. Kaufman Cty.*, 352 F.3d 994, 1013-14 (5th Cir. 2003) (Texas sheriffs); *Crabbs v. Scott*, 786 F.3d 426, 429 (6th Cir. 2015) (Ohio sheriffs); *Franklin v. Zaruba*, 150 F.3d 682, 685 (7th Cir. 1998) (Illinois sheriffs); *Dean v. Cty. of Gage, Neb.*, 807 F.3d 931, 942 (8th Cir. 2015) (Nebraska sheriffs); *Brewster v. Shasta Cty.*, 275 F.3d 803, 811 (9th Cir. 2001) (California sheriffs); *Abusaid v. Hillsborough Cty. Bd. of Cty. Comm'rs*, 405 F.3d 1298, 1304-05 (11th Cir. 2005) (Florida sheriffs*); but see Grech v. Clayton Cty.*, 335 F.3d 1326, 1327 (11th Cir. 2003) (en banc) (Georgia sheriffs acting in a law enforcement function are state actors).

In its state law analysis, the *McMillian* Court relied on Alabama's unique constitutional history. *Id.* at 787-89. Because renegade local sheriffs abused their office during the early nineteenth century, Alabama's 1819 Constitution listed sheriffs in the state "executive department." *Id.* at 787-88. Later constitutional amendments made impeachment procedures for Alabama sheriffs and state legal officers and judges the same, further indicating that sheriffs were considered state officials. *Id.* at 788-89. The Court also noted the Alabama Supreme Court had determined counties lacked *respondeat superior* liability for a sheriff's tortious acts in his official capacity. *Id.* at 789.

The *McMillian* Court viewed relevant Alabama code provisions as "less compelling, but still [in] support" of finding the sheriff was a state actor. *Id.* For example, the Alabama code gave the Governor and attorney general, not the county commissions, direct control over how the sheriffs fulfilled their law enforcement duties. *Id.* at 791.

The Court deemed four other Alabama code provisions relevant but insufficient to "tip the balance in favor" of finding the sheriff to be a county actor: (1) the county paid the sheriff's salary; (2) the county provided the sheriff with equipment; (3) the sheriff's jurisdiction was limited to the county; and (4) county voters elected the sheriff. *Id.* at 791.

The Court concluded the "weight of the evidence" supported finding that Alabama sheriffs represented the state in their law enforcement capacity. *Id.* at 793. We consider

11

*McMillian* in further detail below to compare how Alabama and Kansas law apply to sheriffs in each state.[9]

## II. DISCUSSION

We hold that Sheriff Gay, acting in his law enforcement capacity, is a county actor under Kansas law and thus not entitled to Eleventh Amendment immunity.

### A. *Standard of Review*

"We review de novo the denial of a motion to dismiss based on Eleventh Amendment immunity." *Pettigrew v. Okla. ex rel. Okla. Dep't of Public Safety*, 722 F.3d 1209, 1212 (10th Cir. 2013) (quotations omitted). "Whether a local entity is an arm of the state under the Eleventh Amendment is a question of federal law" that we also review de novo. *Duke v. Grady Mun. Schs.*, 127 F.3d 972, 975 (10th Cir. 1997) (quotations omitted); *accord Steadfast*, 507 F.3d at 1253 ("Eleventh Amendment immunity is a question of federal law and our review is de novo."). "We give deference to state court decisions regarding whether a given entity is an arm of the state, but we do not view these rulings as dispositive." *Steadfast*, 507 F.3d at 1253.

---

[9] Since *McMillian*, the Tenth Circuit has addressed only once whether a sheriff is a state or municipal actor. In *Reid v. Hamby*, we summarily concluded that "under the *McMillian* standard . . . an Oklahoma sheriff is the policymaker for his county for law enforcement purposes." 124 F.3d 217, at *5 n.1 (10th Cir. 1997) (unpublished). *Reid* relied primarily upon a pre-*McMillian* case, *Hollingsworth v. Hill*, which reached the same conclusion because Oklahoma sheriffs' duties were county-specific. 110 F.3d 733, 743 (10th Cir. 1997). *Reid* did not address *Mt. Healthy* or Tenth Circuit arm-of-the-state cases.

B. *Analysis*

To determine whether the district court properly held that Sheriff Gay was a county actor not entitled to Eleventh Amendment immunity, we apply the four factors from *Steadfast*.[10]  For each factor, we also compare the Kansas sheriff to the Alabama sheriff that the *McMillian* Court deemed a state official.

1. *Mt. Healthy* **and** *Steadfast* **Factors**

   a. *Factor 1 – How state law characterizes the sheriff*

Under the first *Steadfast* factor, "we assess the character ascribed to the [defendant] under state law." *Id.* at 1253.  This factor supports finding that Kansas sheriffs are county actors.

The Kansas Constitution does not mention the sheriff's office. *See, e.g.*, Kan. Const. art. I, § 1 (listing the governor, lieutenant governor, secretary of state, and attorney general as "[t]he constitutional officers of the executive department").  It authorizes the Kansas Legislature to "provide for such county and township officers as may be

---

[10] The Eleventh Circuit also addressed each arm-of-the-state factor in determining whether a Florida sheriff was a county actor. *See Manders v. Lee*, 338 F.3d 1304, 1309, 1319-28 (11th Cir. 2003) (addressing the "four factors to determine whether an entity is an 'arm of the State' in carrying out a particular function").

13

necessary." *Id.* art. IX § 2.[11]  The statute that recognizes county officers includes the sheriff.  *See* Kan. Stat. Ann. § 19-801a *et seq.*[12]

Alabama law treats sheriffs differently.  As the *McMillian* Court observed, the Alabama Constitution "explicitly listed [sheriffs] as members of the state 'executive department.'"  520 U.S. at 787 ("The executive department shall consist of . . . a sheriff for each county." (quoting Ala. Const. of 1901, art. V, § 112)).  The Kansas Constitution lacks a similar provision.[13]  *See* Kan. Const. art. I, § 1.

Kansas and Alabama law characterize sheriffs differently in other ways.  For example, the Alabama Constitution makes sheriffs impeachable for neglecting their duties under the same procedures applicable to state legal officers and judges.

---

[11] Determining "[w]hat officers would be considered as county officers" turns on understanding "the purposes and functions of the counties."  *Wall v. Harrison*, 443 P.2d 266, 270 (Kan. 1968).  The Kansas Supreme Court explained the state constitution "recognized a need for separate geographical units of local government," and "[t]he term county officer is generally applied to officers whose territorial jurisdiction is the county and by whom the county performs its usual and necessary political functions."  *Id.* at 270-71 (quotations omitted).

[12] County attorneys are also listed in the same chapter of the Kansas statutes.  *See* Kan. Stat. Ann. § 19-701 *et seq.*  Sheriff Gay points out this court recognized Kansas county attorneys as arms of the state in *Nielander v. County of Republic*, 582 F.3d 1155, 1164 (10th Cir. 2009).  *See* Aplt. Br. at 16-17.  But as we explain below, it does not follow that Kansas sheriffs are state actors.

[13] The Eighth Circuit also reasoned that "Nebraska sheriffs make policy on behalf of their counties," partially because "[n]either the Nebraska constitution nor its statutes list sheriffs as members of its executive branch."  *Dean v. Cty. of Gage*, 807 F.3d 931, 942 (8th Cir. 2015).

14

*McMillian*, 520 U.S. at 788-89. By contrast, the Kansas Constitution does not provide for the impeachment of sheriffs. It instead states generally that "[a]ll county . . . officers may be removed from office . . . as shall be prescribed by law." Kan. Const. art. IX, § 5; *see State ex rel. Ralston v. Blain*, 370 P.2d 415, 417 (Kan. 1962) (explaining "the remedy of impeachment lay only against a state constitutional officer").[14]

*McMillian* also noted the Alabama Supreme Court had held that tort claims based on Alabama sheriffs' official acts were suits against the state, not the county. 520 U.S. at 789 (citing *Parker v. Amerson*, 519 So. 2d 442, 443-45 (Ala. 1987). "Thus, Alabama counties are not liable under a theory of *respondeat superior* for a sheriff's official acts that are tortious." *Id.* By contrast, a Kansas county bears *respondeat superior* liability for its sheriff's tortious acts under the Kansas Tort Claims Act ("KTCA"). Kan. Stat. Ann. § 75-6103; *see Cansler v. State*, 675 P.2d 57, 66-68 (Kan. 1984) (recognizing Leavenworth County could bear legal liability for the Leavenworth sheriff's failure to warn a third-party of escaped prisoners); *Estate of Belden v. Brown Cty.*, 261 P.3d 943, 974 (Kan. Ct. App. 2011) (explaining that "for purposes of the KTCA, sheriff's department personnel are employees of the county").

\* \* \* \*

---

[14] Sheriff Gay contends both the attorney general and the county attorney can initiate removal proceedings against the sheriff, suggesting state power over the sheriff. *See* Aplt. Br. at 30. But this is true for any person holding "state, district, county, township or city office." Kan. Stat. Ann. § 60-1205. Moreover, only the attorney general may initiate removal proceedings against state officers. *Id.* § 60-1206(b).

15

The Kansas Constitution, unlike Alabama's, does not expressly designate sheriffs as members of the state executive department. The Kansas statutes instead include sheriffs in the provisions recognizing county officers. Kansas also lacks the unique Alabama constitutional history supporting the *McMillian* Court's finding that Alabama sheriffs are state actors, including a constitutional provision authorizing impeachment of sheriffs. *McMillian*, 520 U.S. at 788-89. And unlike Alabama courts, Kansas courts find the county liable for a sheriff's tortious acts. We thus conclude the first factor weighs in favor of finding a Kansas sheriff is a county actor.

b. *Factor 2 – The sheriff's law enforcement autonomy under state law*

Under the second *Steadfast* factor, "we consider the autonomy accorded the [defendant] under state law," which "hinges upon the degree of control the state exercises over [the defendant]." *Steadfast*, 507 F.3d at 1253. This factor supports finding that Kansas sheriffs are county actors.

Kansas sheriffs acting in their law enforcement capacity have more autonomy from state oversight than Alabama sheriffs. Kansas law does not grant state actors, such as the governor or attorney general, authority over a Kansas sheriff's law enforcement functions. By contrast, the *McMillian* Court cited Alabama statutes providing state actors with "direct control over how the sheriff fulfills his law enforcement duty." 520 U.S. at 791. For example, Alabama authorizes the governor and attorney general to direct the sheriff to investigate alleged violations of law in the sheriff's county; requires the sheriff to write an investigatory report for the appropriate state official; and instructs the sheriff

16

to share criminal evidence with the district attorney, a state actor. *See id.* at 790-91. The Kansas statutes contain no similar provisions.[15]

Further, the *McMillian* Court noted that when Alabama sheriffs carry out non-law enforcement duties for the judicial system,[16] "the presiding circuit judge 'exercise[s] a general supervision' over the county sheriffs in his circuit, just as if the sheriffs are normal 'court [*i.e.*, state] employees.'" 520 U.S. at 790 (quoting Ala. Code. § 12-17-24 (1995)). Although Kansas sheriffs carry out similar duties, they are not treated as employees of the state court. *See, e.g.*, Kan Stat. Ann. §§ 20-107, 20-363 (Kansas sheriffs must serve all lawful process and orders); *see id.* § 20-101 *et seq.* (omitting references to Kansas sheriffs in provisions related to judicial employees).[17]

---

[15] Other state-level constraints over sheriffs appear in miscellaneous provisions that are virtually the same under Kansas and Alabama law. For example, the governor appoints the replacement for a vacant sheriff's office for the remaining unexpired term, though a county official assumes the sheriff's duties until the replacement is appointed. *See* Kan. Stat. Ann. § 19-804 (under Kansas law, the undersheriff executes the duties of the vacant sheriff's office until the governor appoints a replacement); *McMillian*, 520 U.S. at 792 n.7 (under Alabama law, the county coroner executes the duties of the vacant sheriff's office until the governor appoints a replacement).

[16] Circuit courts have treated the sheriff's law enforcement function as separate from its function in carrying out duties for the judicial system. *See, e.g.*, *Scott v. O'Grady*, 975 F.2d 366, 371 (7th Cir. 1992) (determining an Illinois sheriff is an arm of the state when executing writs and other state court orders, but a county official when acting as chief law enforcement officer).

[17] Kansas and Alabama sheriffs have substantial autonomy from county oversight in carrying out their law enforcement functions. *See* Kan. Stat. Ann. §§ 19-101, 19-101a, 19-801 *et. seq*; *see McMillian*, 520 U.S. at 791 (explaining an Alabama county commission "has no direct control over how the sheriff fulfills his law enforcement duty").

17

*   *   *   *

Unlike an Alabama sheriff, a Kansas sheriff operates largely independently of state constraints in carrying out its law enforcement function, such as direction from the governor or attorney general. And unlike an Alabama sheriff, a Kansas sheriff is not treated as a state court employee in carrying out court-related functions. This factor therefore favors finding that a Kansas sheriff is a county actor when carrying out law enforcement functions.

c. *Factor 3 – Finances*

Under the third *Steadfast* factor, "we study the [defendant's] finances," including "the amount of state funding" received. *Steadfast*, 507 F.3d at 1253. This factor supports finding Kansas sheriffs are county actors.

At first blush, county control of the sheriff's finances in Kansas and Alabama look similar. In Kansas, the county funds and the board of county commissioners approves the sheriff's budget. *See* Kan. Stat. Ann § 19-805(c). "The board must approve the expenditure if it is necessary for a sheriff to carry out his or her statutory duties." *Cty. of Lincoln*, 62 P.3d at 255. "If a board fails to approve a necessary expenditure, then the sheriff's remedy is to mandamus the board." *Id.* Similarly, in Alabama, the county

---

This is consistent with Kansas sheriffs' substantial autonomy in carrying out many non-law enforcement duties. For example, sheriffs largely have discretion to take "charge and custody of the jail of [their] county," Kan. Stat. Ann. § 19-811, and appoint and dismiss deputies and assistants necessary for their office's duties, *id.* § 19-805(a); *Cty. of Lincoln v. Nielander*, 62 P.3d 247, 252-54 (Kan. 2003).

18

provides equipment and reimburses expenses reasonably needed for the sheriff's office. *See McMillian*, 520 U.S. at 791. The *McMillian* Court found this did not make the sheriff a county official because state law prevented the board of county commissioners from denying reasonably necessary funds. *Id.* at 791-92 (explaining the board therefore had "at most . . . an attenuated and indirect influence over the sheriff's operations").

Although counties in Kansas and Alabama appear to exercise similar control over sheriffs' budgets, county control is stronger in Kansas in one respect: the board of county commissioners sets and pays the sheriff's salary.[18] By contrast, the Alabama Legislature sets the sheriff's salary, and the county cannot change it. *See id.* at 791.[19]

Further, the Kansas board of county commissioners may, at any time, demand the sheriff's charged and collected fees "for their inspection and for audit purposes," Kan. Stat. Ann. § 28-123, and the county auditor audits every county officer's books, *see id.* §§ 28-317, 28-618. By contrast, the *McMillian* Court noted that although an Alabama sheriff must give the county treasurer a "sworn written statement detailing the funds he has received for the county," the county treasurer cannot direct the sheriff to act. 520 U.S. at 789 (citing Ala. Code § 36-22-3(3) (1991)). Instead, the Department of

---

[18] The Kansas Legislature repealed the statute under which it set the sheriff's salary. *See* Kan. Stat. Ann. § 28-106 (repealed by Laws 1943, ch. 162, § 20).

[19] Other circuit courts have found this difference relevant. For example, the Ninth Circuit explained that because a California county set the sheriff's salary, it "exercise[d] a somewhat more direct influence over the sheriff" than an Alabama county over an Alabama sheriff. *Brewster.*, 275 F.3d at 811 (citing Cal. Gov. Code § 25300).

Examiners of Public Accounts, a state agency, audits the sheriff's accounts. *See, e.g.*, Ala. Code §§ 45-10-231.30; 45-2-232.01; 45-1-232.30.

* * * *

The third factor favors finding that a Kansas sheriff is a county actor based on county control over the sheriff's salary and auditing authority over the sheriff's books.

d. *Factor 4 – Local or state concerns*

Under the fourth *Steadfast* factor, "we ask whether the [defendant] . . . is concerned primarily with local or state affairs." *Steadfast*, 507 F.3d at 1253. To answer this question, "we examine the agency's function, composition, and purpose." *Id.* This factor favors finding Kansas sheriffs are county actors.

Kansas sheriffs are elected at the county level. Kan. Stat. Ann. § 19-801a ("[A] sheriff shall be elected in each county, for four (4) years."); *id.* § 25-101(a)(10) ("[A]t each alternate election there shall be elected, in each county, a . . . sheriff . . . ."). The sheriff's law enforcement responsibilities are limited to the sheriff's county, *id.* § 22-2401a(1)(a), unless another county officer requests aid or when they are in "fresh pursuit of a person," *id.* § 22-2401a(1)(b). A Kansas sheriff must "keep and preserve the peace in [the sheriff's] respective count[y]," and may call upon "persons of their county" when apprehending "any person for felony or breach of the peace." *Id.* § 19-813.

The Kansas Supreme Court explained that the purpose of Kan. Stat. Ann. § 22-2401a is to "maintain[] local control by cities and counties, protecting them from unwanted intrusion by neighboring law enforcement officers over whom the invaded

20

territory would have no control." *State v. Vrabel*, 347 P.3d 201, 210 (Kan. 2015);[20] *see also State v. Hennessee*, 658 P.2d 1034, 1036 (Kan. 1983) ("The enactment of K.S.A. 22–2401a . . . specific[ally] limit[ed] . . . the extraterritorial exercise of power by law enforcement officers.").

The *McMillian* Court similarly agreed with the petitioner's argument that an Alabama sheriff's "limited [jurisdiction] to the borders of his county" and election by county voters "cut in favor of the conclusion that sheriffs are county officials." 520 U.S. at 791.

\*   \*   \*   \*

Because a Kansas sheriff's law enforcement responsibilities are limited to the sheriff's county, we conclude that the fourth *Steadfast* factor supports finding that a Kansas sheriff performing law enforcement functions is a county actor.

e. *Balance of the factors*

All four factors support finding that Kansas sheriffs are county actors: (1) Kansas law lists sheriffs under county officer provisions; (2) Kansas sheriffs have substantial autonomy from the state in their law enforcement functions compared to their Alabama

---

[20] Sheriff Gay mistakenly contends that *Vrabel* addressed only extraterritorial limitations on city law enforcement officers. Although *Vrabel* addressed whether a city police officer was authorized to conduct a drug operation in a neighboring city, it discussed the Kansas legislature's intent in enacting Kan. Stat. Ann. § 2401a to protect local county and city control. *See Vrabel*, 347 P.3d at 203-11; Kan. Stat. Ann. §§ 22-2401a(1) (limiting a county law enforcement officer's extraterritorial power), 22-2401a(2) (limiting a city law enforcement officer's extraterritorial power).

21

counterparts; (3) the county controls the sheriff's salary and books; and (4) the sheriff is primarily concerned with local affairs.

Sheriff Gay contends that, because Kansas statutes require counties to pay for their sheriffs' operations and because they delegate law enforcement duties to the sheriff, *Steadfast* factors 3 and 4 make him a state actor. *See* Aplt. Br. at 32-33. But neither point demonstrates state control. First, Kansas counties still must approve their sheriffs' budgets and fund them, and unlike in Alabama, Kansas counties set their sheriffs' salaries and audit their books. Second, political subdivisions in all states derive their authority in some measure from the state. *See Hunter v. City of Pittsburgh*, 207 U.S. 161, 178 (1907). But as previously discussed, Kansas sheriffs discharge their delegated authority relatively free from state control, especially compared with their Alabama counterparts.

All four factors point in the same direction. The "weight of the evidence is strongly on the side" of finding that Kansas sheriffs, when executing their law enforcement duties, represent their counties, not the State of Kansas. *McMillian*, 520 U.S. at 793.

## 2. Sheriff Gay's Case Law Arguments Fail

Sheriff Gay's reliance on three cases to argue he is a state actor is misplaced. *See* Aplt. Br. at 11, 15-23, Aplt. Reply Br. at 5-10.[21]

_____

[21] Kansas federal district court cases that have determined Kansas sheriffs are state actors in their law enforcement capacity also rely on these cases. *See, e.g.*, *Kellogg v. Coleman*, No. 18-1061-JTM, 2019 WL 2207954, at *10-11 (D. Kan. July 8, 2019)

a.  Hunter v. Young

Sheriff Gay contends we "held [in *Hunter v. Young*, 238 F. App'x 336, 338 (10th Cir. 2007) (unpublished)] that a Kansas sheriff sued in his or her official capacity is entitled to Eleventh Amendment immunity." Aplt. Br. at 2. In *Hunter*, a former detainee at the Wyandotte County Detention Center brought § 1983 claims for excessive force and inadequate medical care against Wyandotte County sheriff's officers. 238 F. App'x at 337. The panel cursorily determined the sheriff was entitled to Eleventh Amendment immunity as a state actor because Kansas had not waived Eleventh Amendment immunity. *Id.* at 338.

*Hunter* is an unpublished opinion and thus not binding on this court. It also is distinguishable because it did not address the factors relevant to the arm-of-the-state inquiry or *McMillian*. And it considered the sheriff's treatment of a detainee at a detention center, not the sheriff's law enforcement function. *Id.* at 337-38.

b.  Nielander v. County of Republic

Sheriff Gay argues that because we determined in *Nielander v. County of Republic*, 582 F.3d 1155, 1164 (10th Cir. 2009), that Kansas county attorneys sued in their official capacity are state actors with Eleventh Amendment immunity, so are Kansas sheriffs. *See* Aplt. Br. at 16-18. He contends "Kansas sheriffs and county attorneys" "share[] characteristics," as both are created in Chapter 19 of the Kansas statutes,

<hr />

(unpublished); *Myers v. Brewer*, No. 17-2682, 2018 WL 3145401, at *5-6 (D. Kan. June 27, 2018) (unpublished).

"function within a limited and geographically defined jurisdiction," are "selected through *county* elections," and "are funded by local county budgets." *Id.* at 17. We disagree it follows that Kansas sheriffs are state actors.

First, Kansas county attorneys have a statutory duty to the county and the state. *See* Kan. Stat. Ann. § 19-702(a) (county attorneys have statutory duties to "prosecute or defend on behalf of the people all actions and proceedings, civil or criminal, in which the *state or the county* is a party or interested." (emphasis added)). By contrast, Kansas sheriffs have an explicit duty to "keep and preserve the peace *in their respective counties*." *Id.* § 19-813 (emphasis added).

Second, the statement in *Nielander* that the county attorney had Eleventh Amendment immunity was not essential to the decision in that case. After we affirmed the district court's determination that the county attorney had absolute prosecutorial immunity, we mentioned that, although not raised by the defendants, Eleventh Amendment immunity could serve as an alternative basis to affirm. *Nielander*, 582 F.3d at 1164.

Third, the *Nielander* panel relied on a district court decision finding that Kansas sheriffs are not state officials. *Id.* (citing *Schroeder v. Kochanowski*, 311 F. Supp. 2d 1241, 1254 (D. Kan. 2004)); *see Schroeder*, 311 F. Supp. 2d at 1249 n.23 ("The Court disagrees with the Saline County defendants' argument that a county sheriff is a 'state official' and thus plaintiff's claim is barred by the Eleventh Amendment. Defendants fail

24

to cite, nor was the Court able to find, Tenth Circuit cases holding that a county sheriff was a state official.").

   c.   County of Lincoln v. Nielander

Sheriff Gay also points out that in *County of Lincoln v. Nielander*, 62 P.3d 247, 251 (Kan. 2003), the Kansas Supreme Court stated that Kansas sheriffs are state officers. *See* Aplt. Br. at 11.  In that case, the board of county commissioners sought to enjoin the sheriff from employing a deputy sheriff and making certain purchases within the sheriff's budget without the board's advance approval.  *Cty. of Lincoln*, 62 P.3d at 259-61.  In this context of explaining that "[t]he board of county commissioners is not free to usurp the powers of the office of sheriff by controlling the hiring or firing of the deputies and assistants appointed by the sheriff," the *Nielander* court determined "the sheriff is a state officer."  *Id.* at 261-62.

The court also held that, under Kansas law, "sheriffs, not boards of county commissioners, [had] the authority to 'appoint, promote, demote and dismiss additional deputies and assistants.'"  *Id.* at 253-54 (quoting Kan. Stat. Ann. § 19-805(a)).  It thus determined that when the board of county commissioners had approved the budget, the sheriff could not be required to obtain advance approval for within-budget purchases.  *Id.* at 255.

As *McMillian* held, our inquiry is function-specific.  We must address the sheriff's capacity "in a particular area, or on a particular issue."  *McMillian*, 520 U.S. at 785.  Because *County of Lincoln* addressed the sheriff's ability to make personnel decisions

25

and within-budget purchases, not the sheriff's law enforcement duties, it is not controlling here.

* * * *

Sheriff Gay relies on an unpublished, nonbinding case; another that failed to address the *Steadfast* factors or *McMillian*'s analysis; and a third that addressed Kansas sheriffs acting in a non-law enforcement capacity. His reliance is misplaced.

## III. **CONCLUSION**

The district court did not err in denying Sheriff Gay Eleventh Amendment immunity in his official capacity. We therefore affirm. We also grant the Kansas Sheriff Association's outstanding motion for leave to file its amicus brief.