**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 9, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

KRISTEN GUADIANA,

    Plaintiff - Appellee,

v.

CITY AND COUNTY OF DENVER,

    Defendant - Appellant.

------------------------------

COLORADO PLAINTIFF
EMPLOYMENT LAWYERS
ASSOCIATION,

    Amicus Curiae.

No. 21-1294
(D.C. No. 1:20-CV-03784-STV)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **EID**, and **CARSON**, Circuit Judges.
_____

Plaintiff-Appellee Kristen Guadiana was employed by a division of the Denver

Department of Human Services (DDHS) at the City and County of Denver (Denver), but

was dismissed from employment during her probationary period for failure to meet

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

performance standards. Guadiana filed suit against Denver,[1] asserting disability discrimination and retaliation in violation of Title I of the Americans With Disabilities Act (ADA). Denver filed a motion to dismiss under Rule 12(b)(1), asserting sovereign immunity. The district court denied the motion. Considering the factual allegations in Guadiana's complaint, we find that Guadiana sued Denver, not DDHS, that she plausibly alleged to be employed by Denver, and that she plausibly alleged non-DDHS Denver employees participated in the interactive process and the termination decision. Because sovereign immunity does not extend to counties, cities, or other political subdivisions of the state, *Ambus v. Granite Bd. of Educ.*, 975 F.2d 1555, 1560 (10th Cir. 1992), we therefore affirm the district court's decision to deny Denver's motion to dismiss, finding that Denver is not entitled to sovereign immunity at this juncture.

## I.

The following facts are taken from the amended complaint ("complaint"). Denver employs more than 11,000 employees in over fifty departments and agencies. Kristen Guadiana, previously employed by Denver, has cerebral palsy, which causes paralysis on the left side of her body, rendering her unable to use her left hand for certain manual tasks, such as typing.

On May 15, 2015, Denver hired Guadiana as an Eligibility Technician I ("ET") in the Family and Adult Assistance Division ("FAAD") of DDHS. As an ET, Guadiana was

---

[1] Denver is a consolidated city and county government, and is a municipal corporation organized and existing under the laws of the State of Colorado. *See* Colo. Const. art. XX, § 1.

responsible for assisting clients in determining Medicaid eligibility and specifically required to complete a certain number of applications each day. The accuracy of these applications was tracked. Guadiana was required to comply with Denver policies and practices. Furthermore, as a Denver employee, Guadiana was subject to Denver's Career Service Rules, which govern a variety of personnel policies, "including pay, classification, transfers, dispute resolution, promotions, [and] training." App'x at 6.

Guadiana was hired with approximately twenty other ETs, all reporting to Nora Pacheco, Eligibility Supervisor at FAAD. Within a couple months of starting, Pacheco and a few others noted that Guadiana typed with only one hand. Guadiana disclosed to them that she was unable to type with her left hand because of her cerebral palsy. Every month or so, as with all ETs, Guadiana met one-on-one with Pacheco for ten to fifteen minutes to see how Guadiana was doing and determine if she needed anything. Just before the close of each meeting, Pacheco would disclose numbers related to Guadiana's performance (for example, number of completed applications and level of accuracy).

On November 5, 2015, Pacheco told Guadiana her "numbers are a little low" and that Denver would be extending Guadiana's initial probation period. *Id.* at 8. Pacheco asked if she had any idea why her numbers were low and if there was anything she needed to assist her. Guadiana responded by reminding Pacheco that she cannot type with her left hand because of her cerebral palsy. As a result, Pacheco contacted Wilma Springer, the ADA Coordinator at Denver's Office of Human Resources ("DOHR"), who sent a Reasonable Accommodation Questionnaire to Guadiana's physician around November 12, 2015; the physician promptly returned a completed copy.

3

On November 9, 2015, DDHS sent a formal memorandum to Karen Niparko, the Executive Director of DOHR, requesting a sixty-day extension of Guadiana's probationary period to "allow more time to manage the ADA interactive process." *Id.* A month or so later, Gabriel Millán, Pacheco's supervisor and FAAD Operations Manager, contacted Elizabeth Ortiz, who had served as Guadiana's supervisor when Guadiana was an employee of Jefferson County. Millán asked about Guadiana's job duties at Jefferson County, whether she had any "special accommodations," and her reason for leaving. *Id.* at 9. Millán then circulated the feedback from Ortiz to Ms. Springer, an Assistant City Attorney (no relation to DOHR's Wilma Springer), and two employees at DOHR. Guadiana did not consent to this contact, and was unaware Millán had reached out to Ortiz until Denver described the communication in its April 2017 response to Guadiana's EEOC charge of discrimination.

On January 8, 2016, Denver requested another sixty-day extension of Guadiana's probation, this time through May 17, 2016. In the memorandum to DOHR requesting this extension, Denver stated DDHS would purchase voice-activated software for Guadiana by January 31, 2016, and that Guadiana would be given one month to set up and become acclimated to the software before Pacheco could begin tracking and evaluating Guadiana's productivity. On January 12, 2016, DOHR's Wilma Springer shadowed Guadiana to assess what accommodations would be useful. Springer suggested Guadiana might benefit from a one-handed keyboard, voice recognition software, and an ergonomic assessment. Springer also stated that, if these reasonable accommodations were unhelpful, Denver would need to find Guadiana a different

4

position at DDHS or another agency within the City of Denver. On January 25, 2016, Safety Officer Gary Freeman conducted an ergonomic assessment of Guadiana's workspace. In his report, Freeman recommended that Denver provide Guadiana with a "short" keyboard and a ten-key keypad for entering numbers. *Id.* at 10. Guadiana, Wilma Springer, and other Denver employees ultimately decided against the voice recognition software.

Guadiana was on approved leave from mid-February to mid-March for an unrelated medical issue. While on leave, the keyboard arrived but was not installed; the ten-key keypad was never ordered. Springer also ended the interactive process via letter on February 25, 2016, despite the fact that Guadiana had not yet used either keyboard. When Guadiana returned to work, she had a temporary part-time schedule, working four hours per day. Shortly after Guadiana returned to work in mid-March, Denver attempted to install the short keyboard but was unable to do so because it was intended for use with a tablet, not a computer.

During another one-on-one meeting between Pacheco and Guadiana, Pacheco told Guadiana that she did not meet her goals for February or March, but that Pacheco could tell she was on track to meet her goals in April. Guadiana also asked how Pacheco calculated the numbers for February and March because she had only worked eleven days in February and fourteen half-time days in March. Pacheco refused to discuss the matter. Upon returning to work in March, Pacheco assigned Guadiana to a call center where she gave information to clients about their case but did not enter information into the

computer system.  Although Pacheco said she took these calls "into account" when calculating the performance numbers, Pacheco never described how she did so.  *Id.* at 11.

In March, Pacheco provided Guadiana with a Performance Enhancement Progress Report ("PEPR") for the period of May 18, 2015, through December 31, 2015, which is an evaluation provided to Denver employees by their supervisors pursuant to Rule 13 of the Denver Career Service Rules.  Before Guadiana's approved accommodations were in place, Pacheco gave Guadiana a "below expectations" rating, and left out any reference to Guadiana's need for reasonable accommodations.  *Id.* at 11–12.

On or around April 12, 2016, a proper short keyboard finally arrived and was installed.  On April 21, 2016, Denver terminated Guadiana for allegedly failing to pass employment probation.  In the termination letter, Denver referenced several applicable Career Service Rules, including Rules 5 and 14, which address termination from employment during an employee's probationary period, and Rule 19, which provides appeal rights for separations in some circumstances.

Guadiana filed for unemployment insurance benefits and identified Denver as her employer.  These benefits were paid by Denver after the Colorado Department of Labor and Employment awarded her these benefits.  Guadiana filed an EEOC charge of discrimination against Denver within 300 days of her termination.  On September 28, 2020, the EEOC issued a Notice of Right to Sue.

In her complaint in the district court, Guadiana asserted two claims, both against Denver.  First, Guadiana claimed Denver discriminated against her because of her disability in violation of the ADA.  Second, Guadiana claimed Denver retaliated against

her after she made the accommodation request.  The complaint included allegations that Denver had failed to take into account Guadiana's disability-related performance issues; contacted her former supervisor at a previous employer about accommodations received; ended the interactive process without first assessing the effectiveness of the approved accommodations; terminated Guadiana without first evaluating whether her performance issues improved following the accommodations; failed to offer additional reasonable accommodations, including transfer to a vacant position for which she was qualified; and otherwise failing to engage in the interactive process in good faith.

Denver filed a motion to dismiss asserting that Denver has sovereign immunity under the Eleventh Amendment.  The district court denied the motion for two reasons. First, "[a]ccepting the allegations as true," the court found Guadiana "plausibly alleged that she was an employee of the City and not only an employee of DDHS." *Id.* at 51. The court noted that Denver admitted this in its reply in support of its motion, where it stated: "[b]oth . . . Denver and [DDHS], as an agency of . . . Denver, employed the Plaintiff." *Id.* at 40.  Second, the court found that Denver was not entitled to sovereign immunity.  While the court admitted that courts "have consistently dismissed cases against DDHS on sovereign immunity grounds," the court could not find any case upholding sovereign immunity for Denver where the plaintiff had exclusively named Denver as the defendant, and specifically "alleged that she was an employee of [Denver], rather than or in addition to DDHS," and that employees of Denver—as distinguished from DDHS—participated in the interactive process and termination decision.  *Id.* at 53–

54. Thus, the district court held that Guadiana had plausibly alleged claims against a political subdivision, Denver, that did not have sovereign immunity.

## II.

The sole issue in this case is whether the district court erred in its decision to deny Denver's motion to dismiss by finding Denver was not entitled to Eleventh Amendment immunity. We review the denial of a motion to dismiss based on Eleventh Amendment immunity under a de novo standard of review. *See Couser v. Gay*, 959 F.3d 1018, 1026 (10th Cir. 2020). In reviewing Denver's facial attack of Guadiana's complaint, we accept the allegations contained in the complaint as true. *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

The Supreme Court has extended the Eleventh Amendment's applicability to suits by citizens against their own states. *See Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."). The Court has also held that the Eleventh Amendment protects state agents and agencies who are "arm[s] of the state" from being sued in federal court. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *see also Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007).

While Denver claims it is entitled to sovereign immunity because "[Denver] was acting as an agent of the state," Aplt. Br. at 7, Guadiana argues that she was employed by Denver, and that she has only brought claims against Denver, not DDHS. Here, "presum[ing] all of the allegations contained in the amended complaint to be true," *Ruiz*,

8

299 F.3d at 1180, we agree with Guadiana; the complaint intentionally named Denver as the sole defendant and plausibly alleged claims against Denver.

According to the complaint, Denver hired Guadiana for a position in one of its departments, DDHS. Following her hire, Denver paid Guadiana, provided her benefits, trained her, and terminated her employment for violations of its Career Service Rules. Guadiana was entitled to the same benefits as other Denver employees. She was required to comply with Denver policies and practices, and she was subject to Denver's Career Service Rules. DOHR drafted Guadiana's job description and required her to follow Denver policies. Denver also controlled the terms and conditions of Guadiana's employment, including the ADA interactive process and her termination, primarily through DOHR. Notably, the complaint alleges that Denver's ADA Coordinator, an employee at DOHR, was Guadiana's point of contact through the interactive process, and that the process was wrongfully terminated before she had become adept at using the approved keyboards. Assistant City Attorney Springer also told Guadiana that one of the reasonable accommodations that would be considered was a transfer to "another agency within the City," and Denver failed to offer Guadiana this transfer. App'x at 10.

Therefore, because sovereign "immunity . . . does not extend to counties, cities, or other political subdivisions of the state," *Ambus*, 975 F.2d at 1560, we find that the court did not err in finding that the named defendant in this case, Denver, is not entitled to sovereign immunity. Guadiana has plausibly alleged that she was an employee of Denver, distinct from DDHS, and we simply accept these allegations as true. We note, however, that we do not address whether Denver's claim to sovereign immunity will

succeed on the merits once the facts are more solidified beyond the motion to dismiss stage.[2]

Denver cites several district court cases to support its arm-of-the-state theory, essentially claiming that Denver can somehow borrow its agency's sovereign immunity as if Guadiana had brought suit against DDHS. *See* Aplt. Br. at 15. However, we do not find these cases persuasive, and Denver fails to point to any legitimate legal doctrine or precedent to support its position. As the district court found, we are likewise "unaware of any decision in which [Denver]—as distinguished from DDHS—was dismissed where, as here, the plaintiff alleged that she was an employee of [Denver], rather than or in addition to DDHS." App'x at 52–53.

We do not reach the particular inquiry of whether Denver was acting as an agent of the state when it administered human services provided by DDHS. Denver and DDHS are not considered the same entity under Colorado law.[3] We do not assume Guadiana meant to bring claims against DDHS when, according to the plain terms of the complaint,

---

[2] Denver points to *Bettis*, where the plaintiff filed a § 1981 claim against Denver, but where the plaintiff initially named DDHS as the respondent in her Charge of Discrimination and the Intake Questionnaire. *See Bettis v. City and Cty. of Denver*, 2010 WL 1839332 at *1 (D. Colo. Apr. 8, 2010). The court found while "[t]he Complaint could be amended easily to join or substitute the DDHS," this would be futile because the claims were time-barred. *Id.* at *3. Denver also argued DDHS was an arm of the state. *Id.* at *4. The court's analysis on this issue was brief. Instead of considering whether Denver—as a separate suable entity from DDHS—would be entitled to sovereign immunity, the court found the plaintiff's claims (now seemingly characterized as claims against DDHS) were barred because DDHS had sovereign immunity. *Id.* In other words, *Bettis* did not determine the issue applicable here.

[3] The Colorado Human Services Code recognizes that the state and county departments are separate entities with separate roles in providing services. *See* Colo. Rev. Stat. § 26-1-103.

Guadiana named Denver as the sole defendant.  Guadiana intentionally sued Denver, independent of DDHS, and plausibly alleged that she was employed by Denver as distinguished from DDHS.  Had Guadiana brought suit against DDHS, the issue of whether Denver "act[ed] as an agent of the state administering the state's human services programs" may have been a relevant inquiry.  Aplt. Br. at 13.  But she did not.  Thus, we do not reach this issue.

Denver also claims that we should affirm the district court because it "rel[ied] on form over substance" by basing its conclusion "solely on how [Guadiana] characterized her pleading."  *Id.* at 20.  However, at the motion to dismiss stage and without additional facts, our analysis is framed by how the plaintiff here characterized the pleading, presuming all allegations in the amended complaint to be true, and resolving all reasonable inferences in her favor.  We therefore affirm the district court's denial of Denver's motion to dismiss.

## III.    CONCLUSION

For the reasons stated above, we AFFIRM the district court's denial of Denver's motion to dismiss.

Entered for the Court

Allison H. Eid
Circuit Judge

11